In the Matter of the Estate of JAMES A. TURLEY, Deceased.

Surrogate's Court, Westchester County, June 18, 1936.

*Fallon & Fallon,* for the petitioner, Wilhelmina A. Turley, executrix.

*James R. Rooney,* special guardian.

SLATER, S. James A. Turley, a well-known citizen and an attorney at law residing in the city of New Rochelle, died February 26, 1933. He left a will which was probated on March 24, 1933. The petition of the widow recites that she resides at the home, 159 Woodland avenue in the city of New Rochelle; that the decedent left four children, infants ranging from eight to eighteen years of age; that they reside with the petitioner at the home, and that she is their general guardian. All the debts against the estate have been paid with the exception of the Federal and State taxes and the bill for attorneys' services. No accounting has been filed. The will of the decedent makes certain small specific bequests and then divides the residue of the estate, one-half passing to the petitioner and the other half to the four infant children.

On or about May 20, 1922, the decedent purchased the home where the widow now resides and title was taken in the name of a newly-organized company called the Judicial Realty Company, Inc. Since that time the decedent, the wife and the children have resided there. The decedent executed a contract to purchase the property in his own name, but had the title taken in the name of the Judicial Realty Company, Inc. The realty company was organized on May 27, 1922. On June 6, 1922, a resolution of the board of directors was adopted authorizing the purchase of the decedent's interest in the said contract. All the money which went into the purchase of this home was furnished by the decedent. After the decedent's death, it was learned that no certificates of stock had been issued to any one. In fact the stock certificates were never taken out of the stock certificate book.

The prayer of the petition is directed to the infants, who have appeared by a special guardian, to show cause why the stock of the Judicial Realty Company, Inc., should not be transferred to the widow.

There is a clear distinction between capital stock of a corporation and the certificates of stock; the capital stock is the substance, the thing of real value. Here, the money or property of the corporation was put in by the decedent to make up its capital. A certificate of stock is the evidence of an ownership of a part or share of the capital stock. It is merely a muniment of title. It is not necessary to issue certificates of stock in order that a person may own the corporation. It is done, however, for the easy transfer of an interest in the corporation. (*Elenkrieg* v. *Siebrecht*, 238 N. Y. 254, 262; *Parsons* v. *Lipe*, 158 Misc. 32, 59, and cases cited.)

On legal principle the title is in the corporation as a legal entity and artificial personality. The courts, however, have pierced the veil of corporate entity to sustain a gift and, if need be, to impress a trust upon the real property standing in the name of the corporation. There are no intervening interests. Here the decedent was the equitable owner of the property. He supplied the consideration for its purchase. In order to effectuate the intention of a person, the doctrine of corporate entity may be disregarded. The testimony reveals that the corporation was used as a mere dummy or name for James A. Turley. The corporate entity will be charged with the knowledge which its real owner possessed pertaining to the matter of the decedent's treatment of the title. (*Matter of Winburn*, 136 Misc. 19.)

The evidence is that the money was advanced by the decedent for the purchase of the home; that Turley incorporated the company for the purpose of holding his home separate and apart from all his other financial holdings. A witness who had been his secretary for thirteen years testified that Turley had said on numerous occasions that " the home belonged to Mrs. Turley, separate and apart from anything else that was hers;" that " the stock of the corporation he had always intended to be Mrs. Turley's when he got to it;" that " he was providing for the youngsters, when they grow up they have sufficient money to take care of them while they are single and live with Mrs. Turley, they will always have a home, and he said if they do go away and get married, I want to make certain she has the home to herself." The testimony is that he said this on several occasions between 1922 and the date of his death. The evidence is that he had provided liberally for his wife by leaving a large amount of life insurance, the income to be payable annually to her for twenty years. Another witness, the insurance

broker with whom he took out fire insurance upon the home, testified that when Turley took out life insurance the witness asked him why he put the house in a corporate name and he said " for his own protection, the fact that no matter what happened to him he knew the house would go to Mrs. Turley." In answer to the question " What did he [Turley] tell you?" the witness said: " He said that belongs to my wife. No matter what happens to me or my business that will always go to her."

The question is, should a trust be impressed upon the real property in behalf of the widow, based upon the proof of a declaration of trust made by James A. Turley before witnesses, and further, did a confidential relationship exist between the husband and wife, the abuse of which would lead to the implication of a trust?

A gift may be executed by *delivery*, but a trust may be made by *declaration*. The *declaration* bears the same relationship to an equitable gift which *delivery* bears to a legal gift. The creator of a trust can do as he pleases with his property, and in this case it was his own property, and the courts look to the words flowing out of his own mouth to guide them in decision. He declared himself trustee of this property for his wife. (*Matter of Brunswick*, 143 Misc. 573, 578.)

It is now settled that the statute does not obstruct the recognition of a constructive trust effecting an interest in land where a confidential relation would be abused if there were repudiation without redress of a trust orally declared. In the instant case, in its origin the trust is dependent for proof of its existence on nothing better than word of mouth, but such declarations must respond to the call of equity and honor. It is reinforced by the words of promise, by the relation of man and wife, and by acts of confirmation. " In such circumstances, the plastic remedies of the chancery are moulded to the needs of justice." (*Foreman* v. *Foreman*, 251 N. Y. 237, 242; *Natelson* v. *A. B. L. Holding Co., Inc.*, 260 id. 233, 241; *Fraw Realty Co.* v. *Natanson*, 261 id. 396, 401; *Bartos* v. *Bartos*, 138 Misc. 117, 119; *Matter of McArdle*, 140 id. 257, 264.)

I hold that the decedent created a voluntary trust for the wife in the home owned by the Judicial Realty Company, Inc., which, in turn, was owned by the decedent. The decedent, the donor, became the trustee for the beneficiary, the wife. The executrix of the decedent's will is entitled to vote the shares of stock and to elect a board of directors, which directors will elect officers of the corporation. The officers of such corporation are hereby directed to issue the capital shares of the said realty company to the petitioner herein, the widow of James A. Turley. The shares of stock are impressed with a trust in favor of the decedent's widow.

Proceed accordingly.