Douglass S. COLEMAN et al.

v.

TENNESSEE VALLEY TRADES AND LABOR COUNCIL and Tennessee Valley Authority.

Civ. No. 3-74-342.

United States District Court, E. D. Tennessee, N. D.

March 5, 1975.

W. P. Boone Dougherty, Bernstein, Dougherty & Susano, Knoxville, Tenn., for plaintiffs.

Joseph Jacobs, James T. Langford, Jacobs, Jacobs & Davis, Atlanta, Ga., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action by twenty "trades and labor" employees of the Tennessee Valley Authority , who are members of seven different international unions.[1] Plaintiffs seek a declaration of their rights under a collective bargaining agreement (the General Agreement) that exists between TVA and the Tennessee Valley Trades and Labor Council (the Council). Plaintiffs also seek injunctive relief, damages, and attorney's fees. The nature and scope of the relief sought will be more fully described below.

Before the Court are defendants' motions to dismiss or in the alternative for summary judgment. The Court has heard oral argument on the motions and all parties have filed supplemental briefs.

Plaintiffs allege that the defendants have acted independently or in concert to deprive them of certain rights and privileges guaranteed by the Constitution.[2]

A brief background with regard to TVA labor-management relations is necessary for an understanding of the contentions that plaintiffs have set forth. TVA was created in 1933 by Act of Congress (16 U.S.C. § 831 *et seq.*). The TVA Board of Directors was authorized

---

1. Plaintiffs are operating and maintenance employees as distinguished from construction employees who are covered by a separate collective bargaining agreement with TVA. At present, TVA employs over 6,000 operating and maintenance employees.

2. Plaintiffs filed a lengthy complaint and amendment thereto which contain the following allegations of deprivations of constitutional rights: "This action arises under the Constitution of the United States and specifically under the First, Fifth, and Fourteenth Amendments thereto.
  *    *    *    *    *
  This action also presents serious questions dealing with the plaintiffs and their rights to due process of law and equal protection of the law.

The plaintiffs are being denied those rights and privileges given to them by the statutes and Constitution of the United States. Further, the plaintiffs have no other adequate remedy at law or in equity than before this Court in that there are no statutory provisions or general laws which give them rights or protection with the matters hereinafter described.
  *    *    *    *    *
  . . . [T]he actions of the defendants have deprived the plaintiffs of the equal protection of the law, of due process of law, of freedom of speech and of their right and privilege of being properly and fairly represented without being the subject of discrimination and intimidation." Complaint 1–7.

to appoint employees, define their duties, fix their compensation, and "provide a system of organization to fix responsibility and promote efficiency." 16 U.S.C. § 831b. This responsibility was to be carried out "without regard to the provisions of Civil Service laws . . . ." *Id.*

Shortly after the inception of TVA, the Board passed a resolution granting its employees the right to organize and bargain collectively. Initially, TVA bargained with individual unions, but, in 1937, fourteen unions joined together and formed the Council for the purpose of centralized and unified bargaining with TVA. At present, sixteen international unions have representatives on the Council. Plaintiffs are members of seven of these unions.

The first collective bargaining agreement between the Council and TVA was entered into in 1940. Exhibit B to affidavit of William E. Black, Jr. This General Agreement, as amended, together with its Supplementary Schedules, has been in effect since that time. In 1951 the Council was vested with "authority to make . . . revisions in the agreement." Article XV, Exhibit C to affidavit of William E. Black, Jr.[3]

Plaintiffs admit that they are "subject to the provisions of . . . [the] General Agreement." Complaint 4. The General Agreement, as amended, provides that the sixteen member unions will bargain and contract with TVA through the Council.

"This is an agreement between the Tennessee Valley Authority and employees of TVA in the trades and labor classification as represented by the [sixteen] unions listed below. These unions, *acting through the Tennessee Valley Trades and Labor Council,* are recognized as the accredited representatives of these employees.

This agreement shall apply to all TVA employees in the trades and labor classifications who are members . . . [of] the following [sixteen unions] . . . ." (emphasis added)
> Article 1, General Agreement, as revised. Exhibit A to affidavit of William E. Black, Jr.

Historically, at least, the bargaining relationship between TVA and the Council has been praised. *See Labor Management Relations in TVA,* S. Report No. 372, 81st Cong., 1st Sess. 63 (1949). Plaintiffs' position, however, is that the Council no longer adequately represents their interests.

The thrust of plaintiffs' argument is that the Council has assumed the role of a "principal" in conducting labor negotiations with TVA and is no longer functioning as a collective body of sixteen representatives of the international unions; that the Council has become a "labor organization" in and of itself; and, that "TVA is working hand in glove with the Labor Council to effect an iron hand over labor relations in total derogation of the rights and interests of plaintiffs and others."

As an example of the alleged conduct described above, plaintiffs state that they are "violently and adamantly" opposed to the "mixed-crew concept" which was agreed to by the Council and TVA in the General Agreement, as revised in 1974. Article VI provides, in pertinent part, as follows:

> *"Use of Mixed Crews to Perform Maintenance Work*
>
> "1. Maintenance work is performed by mixed-crews. The mixed crew concept utilizes basic skills of all crafts in order to efficiently and effectively promote harmony of effort and increase pro[ductivity of the total work force.] of these objectives, work assign[...]

---

3. Plaintiffs' contention that the 1974 Revision to the General Agreement was invalid because not signed by the current presidents of the sixteen international unions is without merit. The 1974 Revision was unanimously approved by the Council as evidenced by the signatures of the sixteen representatives, including the seven representatives of plaintiffs' unions. Art. XV, Exhibit A to affidavit of William E. Black, Jr.

Consistent with the achievements are made on the basis of skills required for the work to be done. Journeymen of one craft, in addition to work ordinarily performed by their craft, may be assigned to work that is normally done by other crafts.

The use of laborers in mixed crews will be restricted to work such as: loading and unloading of materials by hand, cleaning parts, general cleanup work, and other work normally performed by laborers."

Plaintiffs charge that the Council's lack of authority to represent them is evidenced by a petition (not before the Court) signed by some 3100 trades and labor employees stating that the Council is not their duly authorized representative. Plaintiffs further charge that the "Council is operating in direct opposition to democratic principles and the concepts of equal representation and one-man one-vote;" that the 1974 Revision to the General Agreement was entered into without ratification by individual employees; and, that the Council has no adequate internal procedures, by-laws, rules or regulations to insure democratic representation.

Plaintiffs further charge that this is not a "mere" labor dispute. Jurisdiction is asserted under 28 U.S.C. § 1343, 28 U.S.C. § 1349, 28 U.S.C. § 2201, and Tenn.Code Anno. § 23–1101 *et seq.* In their amended complaint plaintiffs assert that this Court has subject matter jurisdiction under 28 U.S.C. § 1331.[4]

The following relief is sought:

(1) Declaration of plaintiffs' rights under the General Agreement;
(2) damages;

(3) an injunction ordering the Council to employ "more democratic procedures and practices" or, alternatively, "setting aside" the Council and requiring TVA to deal directly with the Unions;
(4) an order requiring TVA to cease and desist from further "collusive" activity with the Council; and
(5) reasonable attorney's fees.

## I. Subject Matter Jurisdiction

■ Although the question is debatable, the Court may have jurisdiction over TVA in this action by virtue of 28 U.S.C. § 1349 [5] which confers federal-question jurisdiction on the district courts without regard to the amount in controversy. *Latch v. Tennessee Valley Authority,* 312 F.Supp. 1069, 1073 (N. D.Miss.1970); C. Wright, *Law of Federal Courts,* § 32 (2d Ed. 1970). Our investigation reveals that the Government does not own more than one-half of the capital stock of TVA because no stock has been authorized or issued by TVA (notwithstanding words to the contrary in *Latch*).

Assuming, *arguendo,* that the Court has jurisdiction with respect to TVA due to the fact that it is a federal governmental agency, the question of subject matter jurisdiction over the Council presents far more serious problems. In their complaint plaintiffs asserted that the Court had jurisdiction under 28 U. S.C. § 1343 and 42 U.S.C. § 1983. The plaintiffs abandoned this claim during oral argument.

■ Plaintiffs also assert that the Court has jurisdiction under 28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act). These statutes are procedural in nature

---

4. TVA is not subject to the provisions of the National Labor Relations Act, the Landrum-Griffin Act, and other labor laws governing labor-management relations in non-governmental employment. *See* 29 U.S.C. §§ 142(3), 152(2), 402(e).

5. This section provides: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock."

and do not serve as an independent basis of jurisdiction. *Commonwealth of Kentucky ex rel Hancock v. Ruckelshaus,* 362 F.Supp. 360, 368 (W.D.Ky.1973) aff'd 497 F.2d 1172 (6th Cir. 1974); 6A *Moore's Federal Practice* ¶ 57.23 (2d Ed. 1974).[6]

▉ The final basis of jurisdiction which plaintiffs assert is 28 U.S.C. § 1331.[7] In their amended complaint plaintiffs state that this action presents

"substantial federal questions, namely, the deprivation of certain rights and privileges secured by the Constitution of the United States and specifically, equal protection of the law and due process of law and, further, in that each of the plaintiffs has sustained and will sustain damages in excess of $10,000, exclusive of interest and costs."

In their supplemental brief, plaintiffs assert that the Council "is not properly representing the plaintiffs and others as is required by its statutory duty of fair representation." Thus, plaintiffs by conclusory allegations charge, although somewhat ambiguously, that jurisdiction exists under the Constitution *and* laws of the United States, 28 U.S.C. § 1331(a).

In support of their argument that the case arises under the laws of the United States, plaintiffs cite *Waters v. Wisconsin Steel Works of International Harvester Company,* 427 F.2d 476 (7th Cir.), *cert. den.* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). Under plaintiffs' argument, as best the Court can discern it, since the Council has assumed the status of a separate "labor organization" [a premise of plaintiffs, discussed previously], *it* has a statutory duty of fair representation. This argument is novel, but, in the Court's opinion, without legal foundation. Plaintiffs rely, at least in part, on the following language from *Waters:*

"The origin of [the duty of fair representation] is statutory, first recognized in cases involving racial discrimination by unions certified as exclusive bargaining agents under the Railway Labor Act. Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1943); Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 120, 65 S.Ct. 235, 89 L.Ed. 187 (1943). The Supreme Court subsequently held that the provisions of the National Labor Relations Act included a similar duty, Syres v. Oil Workers International Union, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955), rev'g 223 F.2d 739 (5th Cir. 1955); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). *Suits for breach of statutory duty may be brought under federal question or civil rights jurisdictional provisions.* Brady v. Trans World Airlines, Inc., 401 F.2d 87 (3d Cir. 1968); Williams v. Pacific Maritime Assoc., 384 F.2d 935 (9th Cir. 1967)." 427 F.2d at 490 (emphasis added by plaintiffs).

Neither the Railway Labor Act nor the National Labor Relations Act applies to labor-management relations in TVA.[8] Furthermore, *Waters* was a racial discrimination case and involved, *inter alia,* an alleged breach of a union's duty of fair representation, 427 F.2d at 490. The seven unions which are the accredited representatives of the plaintiffs are not joined as defendants in this action, and the plaintiffs do not question the status of these unions as the duly author-

---

6. It is beyond dispute that plaintiffs' contention that Tenn.Code Anno. § 23–1101 *et seq.* (Tennessee's Declaratory Judgment Act) confers subject matter jurisdiction in this Court is without merit.

7. This statute provides in pertinent part:
"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

8. See note 4, supra.

ized representatives of their bargaining units.

■ A claim of alleged breach of duty of fair representation must have some statutory basis rather than claimed violations of general constitutional rights. *Cf. Guthrie v. Alabama By-Products Co.*, 328 F.Supp. 1140, 1144 (N.D.Ala.1971) *aff'd* 456 F.2d 1294, *cert. den.* 410 U.S. 946, 93 S.Ct. 1352, 35 L.Ed.2d 613 (1973).

Finally, plaintiffs assert that the Court has jurisdiction under § 1331 because the action arises under the Constitution. Plaintiffs urge that their claimed Constitutional violations [9] give the Court jurisdiction under the First, Fifth, and Fourteenth Amendments. The Fourteenth Amendment pertains to "state action" and has no application here.

■ The Fourth Amendment has been interpreted to give such jurisdiction directly to the federal courts in an action for money damages against federal officers. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* has no application here, however, since the Council is clearly not a federal officer acting under color of his authority. Moreover, this case does not involve the Fourth Amendment. The alleged constitutional claim against the Council involves no "federally protected" right and is, therefore, insufficient to invoke the Court's jurisdiction under § 1331.[10] *Cf. Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Archuleta v. Callaway*, 385 F.Supp. 384 (D.Colo.1974).

This is not to say that plaintiffs have no rights with regard to labor-management relations with TVA. Their rights are protected by the General Agreement with TVA and by the constitutions and by-laws of their respective unions.[11]

## II. *Claim for Relief Against TVA*

TVA's position is that this litigation resulted because of implementation of the "mixed crew concept" [12] as defined in the current General Agreement. TVA further maintains that the mixed crew concept permits it "to more efficiently utilize its employees on the basis of skill required for the work to be done rather than on the basis of craft affiliation." It must be noted that TVA is required by statute to "appoint . . . employees . . . define their duties, and provide a system of organization to fix responsibility and promote efficiency." 16 U.S.C. § 831b. Furthermore, Art. VI, paragraph 5, of the General Agreement as revised through April 15, 1974, provides in pertinent part:

> "TVA and the Council recognize the necessity for eliminating restrictions and promoting efficiency and agree that no rules, customs, or practices shall be permitted that limit production or increase the time required to do the work, and no limitation shall be placed upon the amount of work which an employee shall perform, nor shall there be any restrictions against the use of any kinds of machinery, tools, or labor-saving devices."

The plaintiffs' position is, in essence, that they were denied an effective voice

---

9. See note 2, supra.

10. The Court notes in passing that it is doubtful that plaintiffs have adequately satisfied the jurisdictional amount requirement of § 1331. Plaintiffs state in their amended complaint that "[t]he claim for damages is predicated on the proposition that with the mixed crew concept . . . there will necessarily be a loss of the basic craft identities and thereby a departure from the prevailing wage applications to each of plaintiffs thereby causing them, and each of them, to sustain now and in the future damages in ex-

cess of $10,000, exclusive of interest and costs." The monetary amount requirement in § 1331 is jurisdictional, even in cases involving alleged deprivations of constitutional rights. The plaintiffs' stated basis for the amount in controversy is not without ambiguity. *See Goldsmith v. Sutherland*, 426 F. 2d 1395, 1398 (6th Cir. 1970).

11. This is discussed more fully under the portion of the opinion dealing with exhaustion of remedies, infra.

12. The "mixed-crew concept" is discussed, supra, at 673–674.

in the passage of this mixed-crew provision and that they are "violently" and "adamantly" opposed to it.

Regardless of the relative merits or demerits of the "mixed-crew concept," the fact remains that the sixteen labor representatives on the Council unanimously consented to it as evidenced by their signatures on the General Agreement.

■ The Court turns to basic principles governing labor-management relations for guidance in resolving the matters in this action. One of these basic principles is that plaintiffs enjoy no inherent right to ratify or vote on a contract modification, in the absence of an express requirement in the collective bargaining agreement. *See Aikens v. Abel,* 373 F.Supp. 425 (W.D.Pa.1973). Since the General Agreement provides that revisions may be made by TVA and the Council, this contention is without merit.

■ Similarly looking to traditional labor-management principles, plaintiffs have not made a sufficient showing of exhaustion of their internal union remedies nor their remedies granted under the General Agreement. *Cf. NLRB v. Marine Workers,* 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1967); *Emporium Capwell Co. v. Western Addition Community Organ.,* 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975). Under the terms of the current General Agreement, an employee cannot individually file a grievance

> "for the purpose of getting an established policy, standard, or procedure changed. Such changes may be made only through negotiations between management and employee organizations. If the employee's complaint is against a policy, standard, or procedure, he must take up the matter with his Council representative."

> Supplementary Schedule A–IX A2, General Agreement, 1974 Revision

Affidavits of plaintiffs' representatives on the Council were submitted which indicated that none of the said representatives had knowledge of grievances filed against them under the General Agreement or under the constitutions and by-laws of their respective unions.[13] Plaintiffs submitted the affidavit of Carl Lansden, President and Acting Business Manager of Local 365, International Brotherhood of Electrical Workers, which touched on the issue of exhaustion but which does not refute the affidavits of the representatives to the effect that they had no knowledge of grievances filed against them. Under the provisions of the General Agreement and the constitutions and by-laws of their respective unions, plaintiffs' first resort should be to their representatives on the Council. Despite plaintiffs' conclusory allegations of exhaustion of remedies as stated in their complaint, the Court is not persuaded that any compelling reason exists here to exempt plaintiffs from the exhaustion rule, especially in light of the fact that plaintiffs ask the Court to decide the case on the basis of alleged constitutional deprivations.

Plaintiffs' counsel did write a letter to Mr. William E. Black, Jr., Administrator, Union-Management Relations, TVA, on June 26, 1974, seeking to invoke the provisions of Article IV of the current General Agreement. The Court is of the opinion, however, that TVA properly declined to act on the matter. Article IV is limited by its express terms to disputes arising "as to employees who constitute an appropriate unit or as to who is the duly authorized representative of a unit." The Council is not a bargaining unit; it is an association of sixteen bargaining units. As long as the seven unions to which plaintiffs belong choose to be members of the Council and so long as the General Agreement is in effect, TVA is obligated to bargain through the Council and cannot "investigate" the body with which it is obligated to bargain at arm's length.

---

13. Affidavits of Clyde R. Caldwell, H. F. Grovenstein, M. C. Hargett, Ted D. Harris, George L. Hennegar, Frank Saffel, and R. P. Scudder.

■ Finally, the plaintiffs' allegations of a conspiracy between TVA and the Council are insufficient, even when read in their most favorable light. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971). Furthermore, even if it is assumed that the plaintiffs' allegations are sufficient to withstand a motion to dismiss, TVA cannot be held liable as a conspirator for bargaining with the Council since it is bound to do so under the General Agreement. TVA's refusal to "investigate" the Council cannot be said to be an overt act in support of the conspiracy for the reasons stated above.

### Conclusion

The Court lacks subject matter jurisdiction of the action against the Council.

Assuming, *arguendo*, that subject matter jurisdiction exists in this action as to TVA, the Court concludes, on the basis of the reasons stated above, that there is no genuine issue of material fact and that TVA is entitled to judgment as a matter of law.

Accordingly, it is ordered that defendants' motions for summary judgment be, and the same hereby are, granted, and plaintiffs' action is dismissed.