**Howard JACKSON**

v.

**TENNESSEE VALLEY AUTHORITY and Ickes-Braun Glasshouses, Inc.**

**No. 74-343-NA-CV.**

United States District Court,
M. D. Tennessee,
Nashville Division.

June 19, 1978.

Harlan Dodson, Jr., Hooker, Keeble, Dodson & Harris, Nashville, Tenn., George R. Fleming, Marks & Fleming, Clarksville, Tenn., for plaintiff.

John K. Maddin, Jr., Gracey, Maddin, Cowan & Bird, Nashville, Tenn., Herbert S. Sanger, Jr., Gen. Counsel, Charles A. Wagner, III, Associate Gen. Counsel, Larry S. Bush; William R. Casto, Tennessee Valley Authority, Knoxville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

On August 2, 1974, plaintiff filed suit against defendants to recover damages for injuries he sustained while working at the Cumberland Steam Plant in Cumberland, Tennessee. In his complaint, plaintiff made the following allegations as to the jurisdiction of this court:

1. Your Plaintiff is a resident of the Middle District of Tennessee. Defendant TENNESSEE VALLEY AUTHORITY is a corporation incorporated by act of Congress, maintaining facilities in the Middle District of Tennessee, including Stewart County, Tennessee. ICKES–BRAUN GLASSHOUSES, INC., is an Illinois corporation which did business in the State of Tennessee, as hereinafter related, and is subject to service of process in the State of Tennessee based upon its activities there.

2. This Court has jurisdiction for this case of the TENNESSEE VALLEY AUTHORITY pursuant to the provisions of 28 USCA Sections 1331 and 1349. This Court has jurisdiction in this case over ICKES–BRAUN GLASSHOUSES, INC., on the grounds that Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $10,-000.00, as set forth in 28 USCA Section 1332.

In their answers, neither defendant challenged the jurisdiction of this court, although defendant Tennessee Valley Authority ("TVA") did assert that 28 U.S.C. § 1349 was not applicable to it as a jurisdictional basis for suit. Similarly, in the pretrial order submitted by the parties and approved by the court on July 23, 1975, the jurisdiction of this court as to both defendants was not disputed.

In a memorandum opinion entered on March 17, 1976, the court found that neither defendant was liable to plaintiff for the injuries he had suffered. *Jackson v. Tennessee Valley Authority*, 413 F.Supp. 1050 (M.D.Tenn.1976). In making such a finding, the court found that the jurisdiction of the court had been properly invoked "pursuant to the provisions of 28 U.S.C. §§ 1331 and 1332." Plaintiff subsequently appealed this court's decision to the Sixth Circuit Court of Appeals.

In an order entered on February 17, 1978, the Court of Appeals vacated the judgment of this court and remanded the case to this court for further consideration. *Jackson v. Tennessee Valley Authority*, No. 76–1841 (6th Cir. February 17, 1978). In vacating this court's judgment, the Court of Appeals did not reach the merits of this action and the court's ruling thereon. Rather, the Court of Appeals found that this court had not sufficiently considered the question of subject matter jurisdiction over both defendants. Accordingly, the Court of Appeals remanded the case to this court with directions to "conduct a hearing on the legal issues involved and give the parties an opportunity to present whatever evidence they consider appropriate to support their respective positions."

The hearing ordered by the Court of Appeals was held by this court on April 11, 1978. At said hearing, each of the parties was given the opportunity to present whatever evidence they desired on the issue of jurisdiction, and to argue the jurisdictional questions involved in this case. Based on the evidence adduced therein and the entire record as previously developed by this court, the court makes the following findings.

■ As to the defendant Ickes-Braun Glasshouses, Inc. ("Ickes-Braun"), the question is relatively simple. The basis for jurisdiction asserted by plaintiff as to defendant Ickes-Braun was 28 U.S.C. § 1332(a), diversity of citizenship. 28 U.S.C. § 1332(a) provides in pertinent part as follows:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
> (1) citizens of different States[.]

28 U.S.C. § 1332(c) provides in pertinent part as follows:

> For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: . . .

Thus for the purposes of diversity jurisdiction, a corporation has dual citizenship in both the state of incorporation and the state in which its principal place of business is located. *Steinbock-Sinclair v. Amoco International Oil Co.*, 401 F.Supp. 19 (N.D.Ill. 1975); 13 *Wright, Miller & Cooper, Federal Practice and Procedure* : Jurisdiction § 3624 (1975).

In his complaint as originally filed, plaintiff alleged, and defendant Ickes-Braun admitted, that Ickes-Braun had been incorporated in the State of Illinois. Plaintiff did not allege or prove, however, the location of defendant Ickes-Braun's principal place of business. At the April 11 hearing the following evidence was introduced: Ickes-Braun was incorporated in the State of Illinois. In 1972, Ickes-Braun was acquired by the Roper Corporation through a merger. Roper Corporation had been incorporated in the State of Delaware. The articles of merger between Roper Corporation and Ickes-Braun were filed with the Secretary of State of Delaware in 1972. Since the time of the merger, Ickes-Braun has been at all times an operating division of Roper Corporation. From August 1974 to the present time, the corporate headquarters of Roper Corporation, the office from which the activities of said corporation are supervised and directed, have been located in Kankakee, Illinois. Although Roper Corporation and Ickes-Braun carry on business in a number of states, a substantial part of their business was and is carried on in the State of Illinois.

■ Where a corporation carries on its business in a number of states and no one state is clearly the state in which its business is principally conducted, the state in which the substantial part of its business is transacted and from which centralized general supervision of its business is exercised is the state in which it has its principal place of business. *United Nuclear Corp. v. Moki Oil & Rare Metals Co.*, 364 F.2d 568 (10th Cir.), *cert. denied*, 385 U.S. 960, 87 S.Ct. 393, 17 L.Ed.2d 306 (1966); *Exxon Corp. v. Duval County Ranch Co.*, 406 F.Supp. 1367 (S.D.Tex.1975); *Briggs v. American Flyers Airline Corp.*, 262 F.Supp. 16 (N.D.Okl.1966); 13 *Wright, Miller & Cooper, Federal Practice and Procedure* : Jurisdiction § 3625. The evidence in this case reveals that general supervision over the activities of defendant Ickes-Braun is exercised in the State of Illinois and that Ickes-Braun conducts the substantial part of its business in Illinois. Thus the court holds that it has subject matter jurisdiction over defendant Ickes-Braun pursuant to 28 U.S.C. § 1332(a), the plaintiff being a citizen of the State of Tennessee, the defendant being a citizen of the States of Illinois and Delaware, and the amount in controversy clearly exceeding $10,000. *Steinbock-Sinclair v. Amoco International Oil Co., supra; Gavin v. Read Corp.*, 356 F.Supp. 483 (E.D.Pa.1973).[1]

■ As to defendant TVA, the question of jurisdiction is not as simple. Plaintiff alleged that the court had jurisdiction over defendant TVA pursuant to 28 U.S.C. § 1331. Section 1331(a) provides that the district court shall have original jurisdiction

---

1. On April 28, 1978, plaintiff amended his complaint to allege that defendant Ickes-Braun had its principal place of business in the State of Illinois.

of all civil suits which arise "under the Constitution, laws, or treaties of the United States . . . ." Section 1331(a) also provides that there need be no "amount in controversy" in any action brought against the United States or "any agency thereof." [2]

TVA was created by the TVA Act as "a wholly owned corporate agency and instrumentality of the United States." *United States ex rel. TVA v. An Easement & Right-of-Way Over Two Tracts of Land* (Rogers), 246 F.Supp. 263, 269 (W.D.Ky. 1965), *aff'd,* 375 F.2d 120 (6th Cir. 1967). Section 19 of the TVA Act, 16 U.S.C. § 831r, specifically denominated TVA as "an instrumentality and agency of the Government of the United States for the purpose of executing its constitutional powers." As described by the court of appeals for this circuit:

> The Tennessee Valley Authority exercises an executive or administrative function in its activities, which, prior to its establishment, rested with the divisions of the executive branch of the Government. . . . Its great functions are governmental in nature, and might have been performed directly by officers of the Government. It is plainly a governmental agency or instrumentality of the United States.

*Tennessee Valley Authority v. Kinzer*, 142 F.2d 833, 837 (6th Cir. 1944) (citations omitted). TVA's status as an instrumentality and agency of the United States and, more importantly, the Government's ownership of it were discussed in the legislative histo-

ry to the 1959 amendments to the TVA Act, where committees of both Houses of Congress noted that the United States is TVA's "owner and sole stockholder." S.Rep.No. 470, 86th Cong., 1st Sess. 11 (1959); H.R. Rep.No.271, 86th Cong., 1st Sess. 8 (1959), U.S.Code Cong. & Admin.News 1959, p. 2000.

 TVA's status as a wholly owned federal corporation created under an act of Congress places the present action against TVA squarely within the grant of subject matter jurisdiction under 28 U.S.C. § 1331. In the *Pacific Railroad Removal Cases, Union Pacific Ry. v. Myers*, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885), the Supreme Court held that any claim against a private corporation incorporated under an Act of Congress falls within the general grant of federal question jurisdiction found in the Act of March 3, 1875, 18 Stat. 470, now codified as 28 U.S.C. § 1331(a). The *Pacific Railroad* decision fully retains its vitality with respect to corporations created by Act of Congress and owned by the United States. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 379 n.50, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The courts have consistently relied upon the *Pacific Railroad* decision in finding jurisdiction over tort actions against TVA under sections 1331 and 1337. *Monsanto Co. v. Tennessee Valley Authority*, 448 F.Supp. 648 (N.D.Ala.1978); *Latch v. Tennessee Valley Authority*, 312 F.Supp. 1069 (N.D.Miss. 1970); *Grant v. Tennessee Valley Authori-*

2. Although not asserted by plaintiff as a jurisdictional basis for suit, it appears that jurisdiction over defendant TVA could have properly been asserted pursuant to 28 U.S.C. § 1337. Section 1337 provides that a district court shall have jurisdiction of civil actions "arising under any Act of Congress regulating commerce." The Tennessee Valley Authority Act ("TVA Act") is just such an act regulating commerce. *Ashwander v. Tennessee Valley Authority*, 397 U.S. 288, 328–30, 56 S.Ct. 466, 80 L.Ed. 688 (1936). "In all respects other than amount in controversy, Section 1337 and Section 1331 are read alike and the same tests apply in determining whether a case is one 'arising under' federal law." 13 *Wright, Miller & Cooper, Fed-*

*eral Practice and Procedure*: Jurisdiction § 3574, at 503 (footnote omitted); *see Garrett v. Time-D.C., Inc.*, 502 F.2d 627 (9th Cir. 1974), *cert. denied*, 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975). Since the 1976 amendment to section 1331, 90 Stat. 2721, eliminated any requirement as to amount in controversy in any action brought against the United States or "any agency thereof," and since the TVA Act is an act regulating commerce, it appears that there no longer is any practical difference between section 1331 and section 1337 as a basis for jurisdiction in suits against TVA. Thus, there is no need for plaintiff to amend his complaint to assert jurisdiction over TVA pursuant to section 1337.

*ty,* 44 F.Supp. 589 (E.D.Tenn.1941). *See also Painter v. Tennessee Valley Authority,* 476 F.2d 943 (5th Cir. 1973); *Fowler v. Tennessee Valley Authority,* 321 F.2d 566 (6th Cir. 1963); *Smith v. Tennessee Valley Authority,* 436 F.Supp. 151 (E.D.Tenn.1977); *Musgrave v. Tennessee Valley Authority,* 319 F.Supp. 1330 (N.D.Ala.1975); *Brewer v. Sheco Construction Co.,* 327 F.Supp. 1017 (W.D.Ky.1971); *Littleton v. Vitro Corp.,* 130 F.Supp. 774 (N.D.Ala.1955) (cases in which federal courts exercised jurisdiction over TVA in simple tort actions). These decisions clearly establish that 28 U.S.C. § 1331 constitutes a grant of federal subject matter jurisdiction over all suits against TVA.

In its order of February 17, 1978, the court of appeals expressed concern with whether this court's otherwise proper subject matter jurisdiction over claims against TVA under sections 1331 and 1337 might be restricted by 28 U.S.C. § 1349. Section 1349 provides as follows:

> The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock.

Section 1349 constitutes a "limitation upon jurisdiction rather than a grant of jurisdiction." *Central National Bank v. Reconstruction Finance Corp.,* 134 F.Supp. 873, 875 (N.D.Ill.1955). Although the United States is the "owner and sole stockholder" of TVA, its ownership is not evidenced by stock certificates, but by the terms of the TVA Act. *Coleman v. Tennessee Valley Trades & Labor Council,* 396 F.Supp. 671 (E.D.Tenn.1975); Wirtz, *The Legal Framework of the Tennessee Valley Authority,* 43 Tenn.L.Rev. 573 (1976). The question thus presented in this case is whether the fact that TVA has not issued stock certificates places suits against TVA within the jurisdictional limitation contained within the first portion of 28 U.S.C. § 1349 rather than within the saving language in the final phrase of that section. For the reasons hereinafter stated, the court holds that the

absence of certificates of stock to evidence the Government's ownership and control of TVA does not eliminate the court's otherwise valid jurisdiction over the present case. Section 1349 was not intended to and does not limit a federal court's jurisdiction over a suit against a corporate agency of the United States that is entirely owned by the United States.

The function of the courts in construing legislation is to carry out the will of Congress as best it can be ascertained. In so doing, courts may and should consider all available and relevant matters in discerning the intent of Congress. *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 10, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976); *United States v. Dickerson,* 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940); *United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 389, 59 S.Ct. 516, 83 L.Ed. 784 (1939). "When there is doubt about the meaning of a particular statutory term, courts must construe that term to give effect to the intent of Congress." *Environmental Defense Fund v. Tennessee Valley Authority,* 468 F.2d 1164, 1176 (6th Cir. 1973); *accord, Lawson v. Suwannee Fruit & Steamship Co.,* 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949).

Congress's purpose in enacting the Act of 1925, now codified as 28 U.S.C. § 1349, is clearly reflected in the Act's legislative history. Following the decision in the *Pacific Railroad Removal Cases,* federal district courts were inundated with litigation against private corporations incorporated under Acts of Congress. The Act of 1925 was enacted "to stem 'the flood of litigation to which the federal courts were . . . subjected' as a result of the decision in Pacific Railroad Removal Cases," and to restrict automatic federal court jurisdiction over those private corporations unless the Government owned more than one-half of their capital stock. *Murphy v. Colonial Federal Savings & Loan Ass'n,* 388 F.2d 609, 612 (2d Cir. 1967).

The initial draft of what became section 1349 was prepared by Justices of the Supreme Court and was incorporated as section 12 of a bill introduced by Senator Cummins. S. 2060, 68th Cong., 1st Sess. (1925). As originally drafted, section 12 contained what is now the first part of section 1349:

> That no district court shall have jurisdiction of any action or suit by or against any corporation upon the ground that it was incorporated by or under an act of Congress.

The last phrase of section 1349 concerning Government-owned corporations originated in the Senate Judiciary Committee in correspondence between the chairman of the committee and the vice chairman of the United States Shipping Board Emergency Fleet Corporation, a Government-owned corporation created during World War I to assure an adequate American merchant marine. In response to the Fleet Corporation's letter pointing out the obvious federal interest in maintaining federal subject matter jurisdiction over federal corporations incorporated under an Act of Congress, Senator Cummins, the chairman of the subcommittee handling the bill, replied:

> Section Twelve is obviously too broad. As you may know, there is a provision in Section five of the Act of January 28th, 1915, of similar import, confined to railroad companies. It is a very proper provision when limited to private corporations but of course, it should not be extended to government corporations or to corporations in which the government has the controlling interest.

Letter from Albert B. Cummins to T. V. O'Connor, dated February 11, 1924. The Senate Judiciary Committee's subsequent report on the bill as submitted to the Senate by Senator Cummins, who also served as the bill's floor manager, contained a proposed amendment adding the language now codified as the last phrase of section 1349. The report stated that the limitation of jurisdiction as originally drafted "should be somewhat restricted." S.Rep.No.362, 68th Cong., 1st Sess. 4 (1924).

■ The legislative history of section 1349 clearly demonstrates that the purpose of the 1925 statute was to end federal question jurisdiction based solely on federal incorporation in the case of private corporations, but to preserve it in the case of wholly-owned Government corporations and mixed-ownership corporations in which the Government has a majority interest. In the case sub judice, the literal words of section 1349 can and must be construed to give effect to that congressional intent. The Sixth Circuit was apparently concerned that "capital stock" may have been used in section 1349 as the equivalent of certificates for shares of stock.[3] While that is one possible legal meaning of "capital stock," it is not the only or primary meaning for that term. As stated in 18 C.J.S. *Corporations* § 193 (1939):

> The "capital stock" of a corporation, in the strict and proper sense, is the sum total fixed by the charter or articles of incorporation as the amount paid in, or to be paid in, as the capital on which the corporation is to do business; or the fund of money or other property fixed as the basis for conducting the business of the corporation, as distinguished from the shares representing the separate interest of the individual stockholders; or, in other words, the money or its equivalent advanced by the corporators or members as the capital, which is usually for convenience divided into equal amounts called shares, for which each member is entitled to a certificate, showing the number of shares he has in the company.

---

**3.** *See Hancock Fin. Corp. v. Fed. Savings & Loan Insurance Corp.,* 492 F.2d 1325 (9th Cir. 1974); *Crockett Mortgage Co. v. Government National Mortgage Ass'n.,* 418 F.Supp. 1081 (E.D.Pa.1976); *Coleman v. Tennessee Valley Trades & Labor Council, supra,* 396 F.Supp. 671. The *Hancock, Crockett,* and *Coleman* cases are not persuasive interpretations of section 1349, however. The courts in those cases did not discuss the purpose of section 1349 and its legislative history, failed to perceive the ambiguity of the term "capital stock," and treated the issue in a cursory manner without reflecting their rationale. Furthermore, in each case the courts presented their section 1349 analysis as an alternative ground for their otherwise proper decision.

*Id.* at 614 (footnotes omitted). The C.J.S. article further points out that "capital stock" may be used in statutes in other senses:

> Thus, it is sometimes used to designate the shares of stock in the hands of the stockholders; and sometimes as meaning the property in which the capital stock proper is invested, or even the entire property or assets of the corporation . . . .

*Id.* at 615. In 11 Fletcher, *Cyclopedia of the Law of Private Corporations* § 5079 (rev. perm. ed. 1971), it is noted that modern corporation acts "generally avoid the use of the vague term 'capital stock' with its variable meanings and have substituted the term 'stated capital.' " *Id.* at 11 (footnote omitted).

■■■ Thus, under the primary meaning of the term "capital stock," the United States owns all the capital stock of TVA and is its "sole stockholder." As previously noted, *see* page 6, *supra*, when the TVA Act was amended in 1959, both the Senate and House Public Works Committees described the United States as "the owner and sole stockholder of TVA" even though no certificates for shares of stock have ever been issued. S.Rep.No.470, 86th Cong., 1st Sess. 11 (1959); H.R.Rep.No.271, 86th Cong., 1st Sess. 8 (1959). This also accords with decisions from a number of courts, including those of New York, the country's leading commercial jurisdiction:

> [F]ollowing in the line of the decisions of the courts of our state and of most of the states passing on the subject, there has been a clear distinction made between "capital stock" of a corporation and the "certificates of stock," and that distinction is this: That the "capital stock" is the substance, the thing of real value, the money or property of the corporation put in to make up its capital; while a "certificate of stock" is but the evidence of an ownership of a part or share of the capital stock. It was not necessary to issue certificates of stock in order that a person might be a stockholder in a corporation.

*Parsons v. Lipe*, 158 Misc. 32, 59, 386 N.Y.S. 60, 86 (Super.Ct.1933), *aff'd*, 243 A.D. 681, 277 N.Y.S. 426 (App.Div.1935), *aff'd*, 269 N.Y. 630, 200 N.E. 31 (1936). *See also Medex, Inc. v. Disatlantic Corp.*, 98 N.Y. S.2d 269 (Sup.Ct.1950); *In re Turley's Estate*, 160 Misc. 190, 289 N.Y.S. 704 (Sur.Ct. 1936). Similarly the Seventh Circuit so found with respect to Government corporations in *United States v. Nowak*, 448 F.2d 134, 137–38 (7th Cir. 1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 714, 30 L.Ed.2d 731 (1972).

Construing "capital stock" in 28 U.S.C. § 1349, as these authorities suggest, TVA falls within the literal language of the concluding phrase of section 1349. This is the evident rationale of the court's decision in *Latch v. Tennessee Valley Authority, supra*, 312 F.Supp. 1069, wherein the court concluded that because TVA is "a wholly owned corporate agency and instrumentality of the United States," the United States necessarily "owns more than half the capital stock." *Id.* at 1073 n.11. The conclusion is supported by the Supreme Court's dictum in *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933), which described section 1349 as restricting the applicability of the *Pacific Railroad Removal Cases* "to cases of government owned corporations alone." *Id.* at 485, 53 S.Ct. at 450. *See also Acron Investments, Inc. v. Federal Savings & Loan Insurance Corp.*, 363 F.2d 236 (9th Cir.), *cert. denied*, 385 U.S. 970, 87 S.Ct. 506, 17 L.Ed.2d 434 (1966); *Lew Morris Demolition Co. v. Metals Reserve Co.*, 51 N.Y.S.2d 297 (Sup.Ct.1944).

The above interpretation of section 1349 to give effect to its legislative purpose to preserve federal question jurisdiction in the case of corporations predominately owned by the United States would be proper even if the literal words of that section alone did not suggest such an interpretation. It has long been settled that statutes are to be interpreted and applied in such a manner as to carry out the purpose of Congress even when it requires a departure from the literal words of the statute. *The Church of the Holy Trinity v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892). This

principle was stated by the Sixth Circuit in *Wirtz v. Allen Green & Assocs., Inc.,* 379 F.2d 198 (6th Cir. 1967):

> An examination of the many cases dealing with statutory construction reveals that legislatures do not always use apt words to express their intent. The Court will look to the legislative purpose of the Act and follow that purpose even though a literal reading of the language used would suggest a different conclusion.

*Id.* at 200. Similarly, courts have refused to apply the literal words of a statute if to do so would force them to reach an unreasonable result, and instead have followed the legislative purpose of the statute. *See, e. g., Perry v. Commerce Loan Co.,* 383 U.S. 293, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966); *United States v. American Trucking Ass'n., supra,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; *Crosse & Blackwell Co. v. Federal Trade Commission,* 262 F.2d 600 (4th Cir. 1959). The principle of these and other cases is that a statute will not be construed in such a manner as to produce an unreasonable result or a result inconsistent with the purpose of Congress in enacting the statute.

To read the final phrase of 28 U.S.C. § 1349 as precluding this court's jurisdiction over plaintiff's claim against TVA would mean that federal question jurisdiction exists as to an essentially private corporation in which the Government owns a 51-percent interest, as long as that interest is evidenced by stock certificates, but does not exist as to TVA, an agency and instrumentality of the United States in which the Government has an ownership of 100 percent. The existence of federal subject matter jurisdiction should not turn upon such a formalistic distinction. If certificates of stock in TVA were issued, their principle destiny would be to gather dust in the National Archives. This point was recently made by the court in *Monsanto Co. v. Tennessee Valley Authority, supra,* wherein the court denied plaintiff's motion to remand what it terms to be a negligence action against TVA, on the ground that the federal district courts have subject matter jurisdiction over TVA under 28 U.S.C. §§ 1331(a) and 1337. In so ruling, the court stated:

> There is no ownership of TVA except that of the government. All real and personal property for TVA activities is acquired and held by the United States (16 U.S.C. §§ 831w, 831x) and all the net proceeds of TVA over its expenses are payable into the Treasury of the United States (16 U.S.C. § 831y). It is exactly as if the United States owned all the capital stock and to make it significant for purposes of 28 U.S.C. § 1349 that TVA has no capital stock would seem to exalt form over substance.

448 F.Supp. at 652 (N.D.Ala.1978).

The existence of subject matter jurisdiction in federal district courts of suits against TVA is further supported by the legislative history of 28 U.S.C. § 1491. Section 1491 grants the Court of Claims jurisdiction over actions against the United States for breach of contract. This statute was amended in 1953 to exempt TVA from its provisions. In a committee report filed with the bill so amending the statute, the Senate Judiciary Committee stated:

> A provision is contained exempting the TVA from the act since suits can now be brought against TVA in the Federal district and State courts both in contract and in tort in the United States district court. If future litigation should be brought in the Court of Claims rather than in Federal or State courts in Tennessee Valley, it would necessitate frequent and extended trips to Washington by TVA attorneys and witnesses, which it would deem expensive and burdensome to the Government. It is felt, therefore, that the situation as it now exists relative to the TVA should be left unmolested.

S.Rep.No.261, 83d Cong., 1st Sess. 3 (1953). While not an authoritative statement on the construction of section 1349, this statement of congressional intent is entitled to careful consideration. *See Parker v. Califano,* 182 U.S.App.D.C. 322, 561 F.2d 320 (1977); *Bobsee Corp. v. United States,* 411 F.2d 231 (5th Cir. 1969).

Accordingly, the court finds that it has jurisdiction over defendant Ickes-Braun under 28 U.S.C. § 1332 and over defendant TVA under 28 U.S.C. §§ 1331 and 1337 and that its jurisdiction over TVA is not abrogated by 28 U.S.C. § 1349. An appropriate order will be entered.