**Leland MUSGRAVE, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHOR-
ITY, Defendant.**

**Civ. A. No. 74–G–947–NE.**

United States District Court,
N. D. Alabama,
Northeastern Division.

April 3, 1975.

Emond & Vines, Birmingham, Ala.,
for plaintiff.

Robert H. Marquis, Gen. Counsel,
Beauchamp E. Brogan, Associate Gen.
Counsel, James E. Fox, Atty., Tennessee
Valley Authority, Knoxville, Tenn., Lon-
don, Yancey, Clark & Allen, Birming-
ham, Ala., for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brought suit against the
Tennessee Valley Authority, stating a
claim against it as provided by the Ten-
nessee Valley Authority Act. Plaintiff
alleges that he was an employee of Econ-
dyne Cooling Products Company, an in-
dependent contractor, which was erect-
ing mechanical induced-draft cooling
towers for T.V.A. pursuant to a written
contract. Plaintiff alleges he was in-
jured because of certain conditions of
the scaffolding on which he was work-
ing.

The complaint proceeds upon several
theories. After pretrial discussion and
hearings on the motion for summary
judgment, plaintiff ultimately relied
upon but two of his theories: (1) the
doctrine referred to as the "Good ·Sa-
maritan Doctrine" or the doctrine of lia-
bility expressed in the Restatement of
Torts, Second, § 324A; and (2) the con-
tention that the T.V.A. owed a non-dele-
gable duty to protect plaintiff.

As to the first contention, the
plaintiff contends that the T.V.A., be-
cause of its active participation in a
safety inspection program, in connection
with the work conducted by the indepen-
dent contractor, voluntarily created a
duty upon itself to protect the plaintiff.
The plaintiff cites the Restatement of
Torts, Second, § 324A, wherein it says:

One who undertakes, gratuitously or
for consideration, *to render services to*

*another* which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting *from his failure to exercise reasonable care to protect his undertaking . . .* [Emphasis supplied.]

As aptly stated in Indian Towing Company v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955):

. . . [I]t is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his "good Samaritan" task in a careful manner.

The essence of the theory is that having undertaken an act, it must be accomplished without negligence. The plaintiff says that once the T.V.A. undertook to carry out safety inspections, make recommendations, and urge or require compliance with certain safety standards, it was bound to conduct those activities without negligence. When the negligent performance of those activities led to the injury of the plaintiff, the T.V.A. can be held liable as would any private person.

While the court recognizes the validity of plaintiff's theory, it has cause to question its application to these facts. On similar facts, the Ninth Circuit in Roberson v. United States, 382 F.2d 714, (9th Cir. 1967), held that this doctrine was not applicable under the Federal Tort Claims Act. The court there reasoned that before the doctrine has applicability "it must be shown that the *purpose* of the actor was to render a direct service to the person who was harmed, or to persons of that class." [Emphasis supplied.] In that case it was held that the conducting of safety inspections by the government was not for the purpose of insuring the safety of the independent contractor's employees, but rather to assure the compliance by the contractor with the contract provisions. The safety inspection activities did not relieve the contractor of its contractual duties; rather, they were intended to insure that the contractor performed those duties. The good Samaritan doctrine was held inapplicable to those facts.

The Roberson decision was approved and explained by the Ninth Circuit in Jeffries v. United States, 477 F.2d 52 (9th Cir. 1973). The court there made special reference to Restatement of Torts, Second, § 324A. It recognized that the government's undertaking was not intended to render services to another. The reservation of a right to conduct safety inspection was not intended as an undertaking of a legal duty, but simply as a means to insure compliance with the government safety regulations. The court cited numerous cases from various circuits supporting the Roberson position that reservation of a right of inspection, without more, does not subject the government to liability. *Supra,* page 56.

The logic of the Ninth Circuit's rationale is clear. The government by its acts does not intend "to render services to another." Its actions at all times are merely to enforce the contract obligations rather than benefit any third persons (such as the plaintiff). Therefore its acts do not create liability, since the initial requirement of the doctrine is unsatisfied.

The court finds that the principles espoused by the Ninth Circuit are applicable to the facts of this case. The case is therefore a proper one for summary judgment. Beason v. United States, 396 F.2d 2 (5th Cir. 1968).

That is not to say that under the proper circumstances T.V.A. could not have been held liable. For example, if T.V.A. had actually agreed to provide safety inspection services *for the benefit of* the contractor, had actually exercised control over the safety practices of the contractor's employees, and thereby assumed the safety obligation of the contractor, this may have been a proper case for imposition of a legal duty. *See* the illustration following Restatement of Torts, Second, § 324A, Comment D(2).

However, the court is not aware of any material fact to indicate that this was the case.

The contract provides on page five of that portion designated *"Special Conditions,"* that insuring the work is performed in accordance with applicable safety requirements is the sole responsibility of the contractor. On the first page of that portion designated *"Safety and Health Provisions in Construction Contracts,"* it specifically states that responsibility for initiation and maintenance of the required safety programs shall be the responsibility of the contractor. In the next-to-last paragraph it provides that it shall be the responsibility of the contractor to inspect its operations to determine that safety procedures are followed. The court's reading of these provisions does not indicate that the T.V.A. intended to render safety inspection services for the contractor nor to assume any duty to insure that the required safety procedures were followed. Instead, they simply indicate a pronouncement of the promises made by the contractor concerning safety procedures.

Obviously, the T.V.A. in its construction projects, through its contractors, receives the services of employees who are union members. The T.V.A.'s relationships with these unions might be greatly strained if it did not require that those contractors to whom it lets bids are required to follow certain safety standards. Furthermore, job related injuries interrupt work, cause property damage, and hamper performance of the contract. To prevent the above problems the T.V.A. inspects the contractor's safety procedures to insure compliance with his promises. This action is a far cry from the type undertaking necessary to establish liability under the theories proposed by plaintiff.

The court has before it many cases, from several circuits, that hold that activities far more comprehensive than those alleged here did not create a legal duty upon the government or one of its entities. Craghead v. United States, 423 F.2d 664 (10th Cir. 1970); Beason v. United States, 396 F.2d 2 (5th Cir. 1968); Market Ins. Co. v. United States, 415 F.2d 459 (5th Cir. 1969); Grogan v. United States, 341 F.2d 39 (6th Cir. 1965); Kirk v. United States, 161 F. Supp. 722 (D.Idaho 1958), aff'd, 270 F. 2d 110 (9th Cir. 1959); United States v. Page, 350 F.2d 28 (10th Cir. 1965), cert. denied, 382 U.S. 979, 86 S.Ct. 552, 15 L. Ed.2d 470 (1966); Blaber v. United States, 332 F.2d 629 (2nd Cir. 1964); Wright v. United States, 404 F.2d 244 (7th Cir. 1968). Before it also are cases, ruling against the plaintiff, that possibly permit an innuendo but no more, and ambiguously at that, that there can be such a duty. The court feels obligated to follow the great weight of judicial authority, and rule that under these circumstances T.V.A. is entitled to a judgment as a matter of law.

■ Plaintiff further contends that T.V.A. had a non-delegable duty to protect the plaintiff. Plaintiff makes this assertion by amendment to the complaint and this amendment came too late, without notice to the court or opposing counsel. The amendment was not permitted, but assuming the issue to be before the court, the court still must find the theory inapplicable to these facts.

In support of this contention, plaintiff cites Pierce v. United States, 142 F. Supp. 721 (E.D.Tenn.1955), aff'd, 235 F.2d 466 (6th Cir. 1956); and Hamman v. United States, 267 F.Supp. 411 (Mont.1967). The Pierce case involved a lineman injured in an electrical accident. The plaintiff was working on an electrical substation at the time of his injury. Under Tennessee law there is an exception to the general rule that an employer is not generally liable for negligence of an independent contractor. When from the nature of the work or project, in the natural course of events, mischievous consequences can be expected, it is held that the owner-employer is

held to be under a non-delegable duty to see that appropriate safety measures are adopted. The court rightfully found that electricity has traditionally been found to be extremely dangerous.

The present case can be distinguished from the Pierce case by simply comparing the type work done. Plaintiff here was working on construction of a cooling tower and was injured in the use of scaffolding. The court cannot find that this work is of a nature that is inherently dangerous or in the natural course of events leads to mischievous consequences. To so declare would place most, if not all, construction jobs within the ambit of the "inherently dangerous" exception. Such a far-reaching decision is not required by these facts.

Hamman v. United States involved deaths of several workers when a cableway "man-skip" used in connection with the construction of a dam ran against a canyon wall. The court discussed the non-delegable duty exception to the general rule of non-liability of contractee for injury to independent contractor's employees. It followed Montana law in application of that exception to inherently dangerous jobs. However, the decision does not plainly indicate that the job in question was found to be inherently dangerous and therefore non-delegable. Instead, it appears that summary judgment was denied because of a finding that the government retained sufficient control so as to create liability. Clearly the great weight of authority is to the contrary. *See* cases cited *supra*.

Plaintiff cites several other cases to the court, such as McGarry v. United States, 370 F.Supp. 525 (D.Nev.1973), that can be distinguished from the present case because of the type work involved. The court cannot find that the work engaged in by plaintiff was so dangerous so as to impose a non-delegable duty upon defendant.

Since the court finds that there is no material fact in issue supporting a theory upon which plaintiff could recover, the court rules as a matter of law that the defendant is entitled to judgment.