**TEXAUS INVESTMENT CORP., N.V.,**
Plaintiff-Appellant,

v.

**Roger M. HAENDIGES; Lee Haendiges; Hayes Corp.; The City of Cleveland; Building Commissioner, City of Cleveland; and Chief Building Inspector, City of Cleveland, Defendants-Appellees.**

No. 84–3119.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 14, 1985.

Decided April 26, 1985.

Morton Q. Levin (argued), Mark Ross Greenfield, Levin & Associates, Co., L.P.A., Cleveland, Ohio, for plaintiff-appellant.

Janet Burney (argued), Michael F. Waiwood, Donald P. McFadden, Cleveland, Ohio, for defendants-appellees.

Before LIVELY, Chief Judge, KEITH, Circuit Judge; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

In this diversity action we are asked to determine whether, under the circumstances presented here, the courts of Ohio would impose liability on a municipality based on its building inspectors' negligent failure to properly inspect a building site. The district court held that, since there was no special relationship creating a municipal duty to exercise care for the benefit of plaintiffs, Ohio courts would hold that no liability may be imposed on a municipality for its employees' failure to enforce building ordinances. We affirm.

**Facts**

Plaintiffs Texaus Investment Corporation, N.V. and 331562 Ontario Limited (hereinafter "Texaus") filed this diversity action against private defendants Roger M. Haendiges, Lee Haendiges, Hayes Corporation (hereinafter "Haendiges"), and against municipal defendants City of Cleveland, Cleveland's building commissioner and Cleveland's chief building inspector (hereinafter "city defendants").

An abbreviated version of the facts is sufficient for purposes of this appeal. The action arose out of Texaus' 1976 purchase from Haendiges of the Sony Building, a one story warehouse built in 1973 by Haendiges and located in Cleveland. Texaus alleged, among other things, that Haendiges had negligently failed to comply with the approved plans and specifications for the building, had failed to properly test the soil at the building site, had failed to see that the foundation was properly constructed, and had failed to comply with the city building codes. According to Texaus, Haendiges intentionally concealed these factors from Texaus, and subsequent to Texaus' purchase of the building, the building developed serious structural problems, causing extensive damages to the building and necessitating expensive repairs.

Texaus also alleged that the city, along with its building commissioner and chief building inspector, negligently and in violation of city ordinances failed to review the building plans submitted by Haendiges, failed to conduct proper inspections during construction, failed to maintain proper records and reports, failed to keep permanent, accurate records, failed to withhold issuance of a certificate of occupancy and failed to require soil tests prior to the issuance of the building permit. Texaus contended the city's failure to comply with the building code constituted negligence per se and was a proximate cause of Texaus' injuries.

The city defendants moved for summary judgment. The city reasoned that even if the facts as alleged by Texaus were true, the city had violated no duty to Texaus that would give rise to a cause of action. Contending that the city building code was a general welfare provision enacted for the protection of the public at large, the city argued that it had no special relationship to plaintiffs and that the building code did not create a municipal duty to plaintiffs the violation of which would create a cause of action. The city contended that under this public duty doctrine the city was entitled to summary judgment as a matter of law.[1]

Opposing the city's motion for summary judgment, Texaus argued the public duty/private duty dichotomy was an artifi-

---

1. The city also contended it was entitled to summary judgment on statute of limitation grounds. Because we hold the city entitled to summary judgment based on the public duty doctrine, we, like the district court, find it unnecessary to address the statute of limitation issue.

cial distinction that had been repudiated by many jurisdictions and that was inapplicable to the case at bar. Texaus also pointed out that in a series of cases the Ohio Supreme Court had recently abolished municipal sovereign immunity and in none of those cases had the supreme court acknowledged the existence of the public duty/private duty dichotomy. From this, Texaus inferred that the Ohio courts had abandoned the private duty/public duty doctrine.

In considering the city's summary judgment motion, the district court stated the issue as "whether a municipality, which has enacted ordinances setting out a program of building inspection, is liable to a private citizen for damages arising from the municipality's failure to comply with the ordinances." Noting there was no Ohio case law on point, the district court, in its unpublished opinion, examined the law in other states and concluded that Ohio courts would impose no duty or liability on the city defendants.[2] The court based its holding on the public duty/special duty[3] principle that, absent a special relationship creating a municipal duty to exercise care for the benefit of a particular class of individuals, no liability may be imposed upon a municipality for failure to enforce a statute or regulation.

This case is before us on plaintiff's appeal of the district court's grant of summary judgment for the city defendants; the district judge directed the entry of a final judgment as to the city defendants pursuant to Fed.R.Civ.P. 54(b). Liability of the non-city defendants remains to be determined.

### Analysis

When reviewing a grant of summary judgment, an appellate court applies the same standard as was employed by the district court under Fed.R.Civ.P. 56(c):

summary judgment is proper when it appears there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716 at 643 (1983). *See Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1455–56 (6th Cir. 1984), *cert. denied,* — U.S. —, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). In this diversity action Ohio law creates the substantive rights under which plaintiff seeks to prevail; our task is to adjudicate those substantive rights as would the courts of Ohio. *See Hartford Fire Insurance v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362, 1365 (6th Cir.1984) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

At the time the district court ruled on the motion for summary judgment, there was little relevant Ohio case law. Consequently, the court undertook a thorough review of the law of other jurisdictions in reaching its decision regarding how the Ohio courts would decide the public duty/private duty issue. Subsequent to the district court's grant of summary judgment, decisions by Ohio appellate courts indicate, we believe, that Ohio would apply the public duty doctrine and find the city defendants not liable. Therefore we need not examine the law of other states.

### I.

In 1975, the Ohio General Assembly waived the *state's* sovereign immunity on a limited basis via enactment of the Court of Claims Act. Ohio Rev.Code Ann. §§ 2743.- 01–.03 (Page 1981). *See Reynolds v. State,* 14 Ohio St.3d 68, 471 N.E.2d 776, 778–79 (1984). Following the legislature's lead, the Supreme Court of Ohio has largely abolished the defense of *municipal* sovereign immunity. In a series of decisions

---

**2.** Initially the city moved to dismiss the complaint on the ground that the city was shielded from liability by sovereign immunity. Denying the city's motion to dismiss, the district court correctly recognized that Ohio's law on sovereign immunity had been altered by the recent decision of the Ohio Supreme Court in *Haver-*

*lack v. Portage Homes, Inc.,* 2 Ohio St.3d 26, 442 N.E.2d 749 (1982).

**3.** The district court alternately referred to this dichotomy as "public duty/private duty" and "public duty/special duty."

generally reported since the district court's decision, the Ohio Supreme Court held that municipalities were no longer shielded from tort liability by sovereign immunity. *See, e.g., Bier v. City of New Philadelphia*, 11 Ohio St.3d 134, 464 N.E.2d 147 (1984) (alleging city's negligence in not installing a lightning protection system on picnic shelter was a concurrent cause of plaintiffs' injuries, plaintiffs sued city for damages suffered when lightning struck city picnic shelter rented by plaintiffs for a family picnic; trial court held that plaintiffs' injuries were caused by an act of God and granted summary judgment for the city; supreme court reversed and held that the city could be held liable even if some other cause concurred with the city's negligence in producing plaintiffs' injuries); *O'Brien v. Egelhoff*, 9 Ohio St.3d 209, 459 N.E.2d 886 (1984) (plaintiffs alleged city's unreasonable enforcement of its codes caused delays in completion and occupancy of a housing project owned, constructed and managed by plaintiffs; based on sovereign immunity, the trial court granted summary judgment for city; Ohio Supreme Court reversed, holding sovereign immunity not applicable); *Zents v. Board of Commissioners*, 9 Ohio St.3d 204, 459 N.E.2d 881 (1984) (tort action against the county for injuries occurring during the renovation of a building owned by county and subleased by plaintiffs; supreme court held the defense of sovereign immunity was available to counties only under the same limited circumstances as it was available to municipalities); *Mathis v. Cleveland Public Library*, 9 Ohio St.3d 199, 459 N.E.2d 877 (1984) (action by mother of a child who was seriously injured when struck by a car while exiting city library bookmobile; supreme court reversed the trial court's grant of summary judgment and held the defense of sovereign immunity was unavailable to the public library); *Marrek v. Cleveland Metroparks Board of Commissioners*, 9 Ohio St.3d 194, 459 N.E.2d 873 (1984) (tort action brought by an injured sledder, supreme court held the defense of sovereign immunity was not available to the park district board of commissioners but that

the board did enjoy statutory immunity under a statute providing that no owner of premises owed any duty to a recreational user to keep the premises safe); *Strohofer v. City of Cincinnati*, 6 Ohio St.3d 118, 451 N.E.2d 787 (1983) (plaintiffs and their decedents had been injured in traffic accidents on Cincinnati and Columbus city streets; plaintiffs sued the cities on the theories that the cities acted negligently and created a nuisance by erecting and maintaining traffic control lights or placing a traffic sign in a manner that confused motorists at the intersections where the collisions occurred; the trial courts granted judgment for the cities on the basis of sovereign immunity; Ohio Supreme Court reversed and remanded, holding sovereign immunity defense not available); *Enghauser Manufacturing Co. v. Eriksson Engineering Ltd.*, 6 Ohio St.3d 31, 451 N.E.2d 228 (1983) (landowner sued the city for negligently designing, planning and constructing a new bridge and roadway that resulted in the flooding of plaintiffs' abutting industrial property; jury found the city liable and awarded damages; trial court set aside the judgment on the ground of sovereign immunity; supreme court reversed and reinstated the award of damages); *Haverlack v. Portage Homes, Inc.*, 2 Ohio St.3d 26, 442 N.E.2d 749 (1982) (cited by the district court below; in action for damages allegedly caused by a sewage treatment plant, Ohio Supreme Court held that absent a statute providing immunity, the defense of sovereign immunity was not available to a municipal corporation; the first case to abolish municipal sovereign immunity, although the breadth of the holding was not certain).

To determine whether, in a given situation, a municipality is entitled to sovereign immunity, the Ohio Supreme Court established the following guidelines:

1. [N]o tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy

decision which is characterized by the exercise of a high degree of official judgment or discretion.

2. However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities.

*Enghauser Manufacturing Co. v. Eriksson Engineering Ltd.*, 6 Ohio St.3d 31, 451 N.E.2d 228, 229 (1983). Explicitly discrediting the proprietary function/governmental function analysis, the Ohio Supreme Court stated that "so far as municipal government responsibility for torts is concerned, the rule is liability—the exception is immunity." *Enghauser*, 451 N.E.2d at 230.

In the above cited decisions recognizing the judicial repeal of municipal sovereign immunity, the Ohio Supreme Court makes no mention of the public duty/private duty doctrine. This silence lends some credence to Texaus' argument that the public duty/private duty dichotomy had been buried alongside the governmental function/proprietary function doctrine. But, we believe a closer examination of Ohio case law strongly supports the proposition that the abolition of municipal sovereign immunity did not abolish the private duty/public duty doctrine and thereby impose new duties on municipalities.

## II.

Sovereign immunity functions as an absolute bar to tort actions against a state or municipality. The nature of sovereign immunity is not to deny that a municipality's conduct was tortious; rather, sovereign immunity absolves the municipality from liability because of its status. *Strohofer v. City of Cincinnati*, 451 N.E.2d at 794 (Holmes, J., dissenting) (citing Prosser, *Law of Torts* 970 (4th ed. 1971)). The abolition of sovereign immunity did not, therefore, impose new duties upon municipalities. *Id.* "Whether a municipality is under a duty, in a given case, is dependent upon factors other than sovereign immunity." *Id.*

With the abolition of sovereign immunity, Ohio courts found it necessary to delineate the limits of a sovereign's duty to its citizens. *Shelton v. Industrial Commission*, 51 Ohio App.2d 125, 367 N.E.2d 51 (1976), is an example of this early line drawing. In *Shelton*, a private employee sued the state agencies responsible for industrial safety and boiler inspection for the injuries he incurred when a boiler exploded at his place of employment. Plaintiff contended that the state agencies were negligent in performing their statutory duties to make various inspections and that as a result of their negligence a boiler exploded and plaintiff was permanently disabled. The Ohio Court of Appeals stated that although plaintiff's suit against the state agencies was not barred by sovereign immunity, the abolition of sovereign immunity had "not create[d] *new* duties, it only provide[d] a remedy for existing duties where the state was previously immune from suit and a private party under similar circumstances would have been liable." 367 N.E.2d at 54 (emphasis in original). Explaining further, the court stated:

Statutes requiring state agencies to inspect and enforce safety standards were enacted to protect the public generally against unsafe conditions. They were not intended, nor should they be so construed, to create a duty toward any particular person. Likewise, their performance or nonperformance cannot be the basis of a tort action by an injured person.

*Id. See also Walls v. City of Columbus*, 10 Ohio App.3d 180, 461 N.E.2d 13, 15 (1983) (recognizing correctness of *Shelton*); *City of Oregon v. Ferguson*, 57 Ohio App.2d 95, 385 N.E.2d 1084, 1087–88 (1978) (same). *Accord Smith v. Wait*, 46 Ohio App.2d 281, 350 N.E.2d 431, 433 (1975).

Although *Shelton* dealt with the state's liability, subsequent decisions establish that the same principles govern both municipal and state liability. *Reynolds v.*

*State*, 14 Ohio St.3d 68, 471 N.E.2d 776, 778 (1984).

It is true that the court in *Shelton* did not expressly articulate the public duty/private duty doctrine as the basis for its holding; but a more recent case elaborates on the public duty doctrine as a limitation on municipal liability. In *Cain v. State*, 14 Ohio App.3d 105, 470 N.E.2d 208 (1984), the Ohio Court of Appeals held that plaintiffs had no action against the state because of the public duty doctrine. Plaintiffs were injured in an automobile accident caused by a driver who could neither read nor write English. Under an Ohio statute, drivers license applicants who were limited in their knowledge of English could " 'be tested by methods that would indicate to the examining officer that the applicant [had] a reasonable knowledge of motor vehicle laws and [understood] traffic control devices.' " *Cain*, 470 N.E.2d at 209 (quoting Ohio Rev.Code § 4507.11). But, a statute prohibited issuance of a drivers license to any person " 'unable to understand highway warnings or traffic signs or directions given in the English language.' " *Id.* (quoting Ohio Rev.Code § 4507.08(C)). The *Cain* plaintiffs argued that these statutes were adopted for the protection of the public, that the state owed a duty to persons such as plaintiffs to protect them from drivers who could not reasonably be expected to comply with traffic signs, and that by issuing a license to a person who did not understand English highway warning signs, the state breached its duty to plaintiffs and caused plaintiffs' injuries. Rejecting plaintiffs' arguments, the Ohio Court of Appeals stated:

> statutes such as those before us in this case do not create a duty owed to any specific or particular person, but rather, create duties owed only to the general public ... noncompliance with such statutes can therefore not be the basis of a tort action.
> . ... Neither [statute] creates a duty owed by the state of Ohio to plaintiffs, but, rather, they create a statutory duty to administer examinations to persons who do not speak or write the English

language that will indicate that the applicant has a reasonable knowledge of motor vehicle laws and understands the highway traffic control devices. *That duty is to the public in general and not to specific persons or groups of persons.*

*Id.* at 209 (citations omitted) (emphasis added). Reasoning that the statutes created only a duty to the general public, the court of appeals affirmed the trial court's dismissal of the case. (A motion to certify *Cain* to the Supreme Court of Ohio was overruled.)

From the court of appeals' decisions in *Cain* and *Shelton*, we conclude that the abolition of municipal sovereign immunity has not obtunded the vitality of the public duty/private duty doctrine in Ohio law. In reaching this conclusion, we acknowledge that the Ohio Supreme Court, in a December 1984 decision, did not apply the public duty/private duty dichotomy in a tort action against the state. In *Reynolds v. State*, 14 Ohio St.3d 68, 471 N.E.2d 776 (1984), Mr. and Mrs. Reynolds sued the state for injuries suffered when a prisoner on work release furlough brutally assaulted and raped Mrs. Reynolds, leaving her permanently paralyzed. Under Ohio law state officials were permitted to grant work release furloughs to convicted felons. State law also required that a prisoner granted a furlough must " 'be confined for any periods of time that he is not actually working at his approved employment.' " 471 N.E.2d at 777 (quoting Ohio Rev.Code § 2967.26(B)). When the attack occurred, the prisoner who assaulted Mrs. Reynolds was neither at his approved employment nor confined as required by statute. The Ohio Court of Claims and the Ohio Court of Appeals dismissed the Reynolds' action on the theory that the state had breached no duty owed to the Reynolds. *Id.* at 778. Reversing the lower courts, the Ohio Supreme Court held that the abrogation of sovereign immunity meant

> the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function in-

volving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities.

*Id.* Applying these principles, the court held that while plaintiffs could not maintain an action against the state for its decision to furlough a prisoner, plaintiffs could maintain an action against the state for personal injuries proximately caused by the state's failure to confine the prisoner during non-working hours as required by statute.

For several reasons we do not read *Reynolds* as abolishing the private duty/public duty dichotomy recognized in prior Ohio case law, i.e., *Cain* and *Shelton.* First, the supreme court in *Reynolds* did not expressly disapprove the public duty/private duty doctrine; the court merely reiterated its prior holding that because sovereign immunity had been abolished, the state could be held liable for its agents' negligence in the same manner as private parties. In view of the court of appeals' express recognition and application of the public duty doctrine in *Cain,* we are unwilling to infer that *Reynolds* somehow implicitly abolished that line of authority. Second, in *Reynolds,* the state had been entrusted with exclusive control of the furloughed prisoner by virtue of his being sentenced to the state prison; the man who assaulted Mrs. Reynolds was in the state's custody. The degree of state control over the prisoner in *Reynolds* contrasts sharply with the city of Cleveland's control over the construction of the Sony Building. Under the city building code, the city's duty was to inspect the building site from time to time and upon completion; the city was not obligated to station a full time inspector on the site. The city's alleged failure to properly implement the building code resembles the state's failure in *Shelton* to inspect the boiler that later exploded. It is not difficult to foresee monumental financial consequences if cities are to be held liable for harm caused by negligent failure to enforce ordinances. We do not understand the abrogation of municipal sovereign immunity to require such consequences.[4]

### III.

Ohio law is still developing in this area, and we recognize that the issue is not without doubt. In addition to finding the opinion of the district court persuasive in itself, we note that as a matter of law the opinions of federal district judges on matters of state law within their own states are entitled to "considerable weight." *Diminnie v. United States,* 728 F.2d 301, 306 (6th Cir.) (citing cases), *cert. denied,* —— U.S. ——, 105 S.Ct. 146, 83 L.Ed.2d 85 (1984). *See also Filley v. Kickoff Publishing Co.,* 454 F.2d 1288, 1291 (6th Cir.1972). In the instant case, Judge Dowd was particularly well qualified to determine whether the Ohio courts would apply the public duty doctrine. Not only is Judge Dowd a district court judge sitting in Ohio, he served on the Ohio Court of Appeals and the Ohio Supreme Court prior to being appointed to the federal bench. While recognizing that we may not rank among the illuminati on Ohio law, we believe that Judge Dowd's opinion, by virtue of his judicial experience on the Ohio appellate courts, should be given considerable weight.

---

**4.** Plaintiff in its brief on appeal separately argues that the city defendants could be held liable because, in purchasing the Sony Building, plaintiff *relied* on the city defendants' having enforced the ordinances. Plaintiff did not include this theory in its complaint, the only theory pleaded being that negligent failure to enforce the ordinances was a proximate cause of the harm suffered. The brief filed by plaintiff in opposition to the city's motion for summary judgment does not contend that there was support in the record for such reliance. The district court in its opinion granting the motion for summary judgment did not deal with this theory. In any case, we believe, because of Ohio's acceptance of the public duty/private duty doctrine, appellant could not prevail on the reliance theory.

### Conclusion

■ We conclude there is solid basis in Ohio law for holding that under the circumstances presented here the city's alleged failure to enforce the building code ordinances does not constitute the basis for a tort action by Texaus. Accordingly, we affirm the district court's grant of summary judgment for the city defendants.