**Kathy THOMAS, Personal Representative of the Estate of Martin Duane Thomas, Deceased, Plaintiff-Appellant,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.**

No. 84–5472.

United States Court of Appeals, Sixth Circuit.

Argued April 18, 1985.

Decided August 2, 1985.

---

Charles L. Berger, argued, Berger & Berger, Evansville, Ind., John Hoffman, Sheffer, Hoffman, Neel & Wilson, Henderson, Ky., for plaintiff-appellant.

Charles W. Van Beke, argued, Herbert S. Sanger, Jr., General Counsel, James E. Fox, Associate Gen. Counsel, Melvin L. Harper, Tennessee Valley Authority, Knoxville, Tenn., Marvin P. Nunley, McCarroll, Nunley & Hartz, Owensboro, Ky., for defendant-appellee.

Before MERRITT and WELLFORD, Circuit Judges, and EDWARDS, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.

Plaintiff Kathy Thomas appeals from summary judgment granted as a matter of law by a District Judge in the Western District of Kentucky against her claim for damages arising out of her husband's death. It is appellant's contention that there were fact issues requiring a jury trial of her complaint against appellee Tennessee Valley Authority (TVA).

TVA was the owner of the air separator tower at TVA's Paradise Steam Plant near Drakesboro, Kentucky which the J.A. Jones Company was constructing under a TVA contract at the time appellant's husband, a Jones employee, fell through a cable guardrail 70 feet to his death. Appellant alleged diversity jurisdiction and that the case was governed by Kentucky law. Appellee TVA originally admitted that diversity jurisdiction applied. Now, however, TVA's position has changed and it argues that this case involves federal question jurisdiction under 28 U.S.C. § 1331. It also contends that under either Kentucky or federal law, the District Judge should be affirmed.

Shortly before the subject accident, a TVA inspector had inspected this construction project, subsequently writing a report as follows: "Inspection of J.A. Jones' project was made with their safety engineer. Several areas having cable guardrails and an open-ended scaffold were noted. They are taking corrective action." This record does not show any subsequent action taken pursuant to the warning by TVA or the J.A. Jones Company prior to the fatal accident.

The TVA contract with Jones was designed quite obviously and to the degree possible to insulate TVA from liability for

the type of personal injury accident here involved. The contract provided in part:

The Contractor shall be an independent Contractor for all purposes of this contract, and all persons engaged in carrying out any of the Contractor's obligations hereunder shall be the servants of the Contractor or its subcontractors and not the servants or agents of TVA. The Contractor is aware of the location, nature and hazards of the work covered by this contract.

Appellant, however, points out that TVA reserved rights to inspect for violations of safety regulations and to direct changes as shown in the following contract provisions:

The contractor shall be responsible for enforcing regulations in accordance with American National Standards Institute and other recognized national codes, including OSHA. Any work attempted to be made or actually accomplished in violation of any existing applicable law, ordinance, regulation or approved safety practice shall be the contractor's sole responsibility.

During the progress of the work, the contractor shall cooperate fully with TVA's safety representatives. They shall have access to the site at all times and shall be given every facility for making unhampered inspection. They may direct any changes they deem necessary.

Appellant further claims that by noticing a safety violation and warning the contractor of it, TVA contributed to appellant's husband's death and by not doing anything more to correct the violation, TVA was guilty of causal negligence. She also argues that whether TVA was guilty of causal negligence was a question of fact for the jury.

Before turning to that question, however, we must decide the preliminary question of what law applies in this case.

TVA correctly notes that this court has held that TVA may be sued under Federal question jurisdiction. 28 U.S.C. §§ 1331 and 1337. *Jackson v. TVA*, 595 F.2d 1120 (6th Cir.1979), affirming, 462 F.Supp. 45, 49–55 (M.D.Tenn.1978). TVA asserts that federal common law should control this case, because of its assertion that the claim is essentially a contract claim and not one sounding in tort. TVA concedes that if the claim is construed as a tort claim, state law, in this instance Kentucky law, controls the outcome.

■ We hold against TVA's contention. This suit, filed by the widow of the deceased employee, does not sound in contract and does sound in tort. The only contract involved is that between TVA and the Jones Construction Company (which as noted above is not a party to this suit). TVA may, of course, urge the terms of its contract with Jones in mitigation of any duty that it had to the deceased Jones employee. But the widow's action to recover damages for her husband's death is clearly a tort claim alleging TVA's knowledge of a risk and assumption of a duty and a claim that TVA failed to take or immediately to require Jones to take steps to remedy the perceived safety violation.

The District Court chose to apply Kentucky law to appellant's claims. We believe the District Court was correct regardless of whether jurisdiction in this case is based on federal question or diversity jurisdiction. Appellant challenges the District Court's application of Kentucky law. Additional facts are required for this issue.

The use of the cable guardrail was in violation of TVA's safety manual which required wooden handrails be used. While TVA protested this violation of its (TVA's) safety rules by decedent's employer, it did nothing more about it until appellant's decedent fell to his death while installing yet another cable guardrail. It appears that this accident occurred a little over a week after a TVA engineer made an inspection of the construction site, noted the violation referred to above and demanded correction by the contractor. TVA's safety rules which had been pointed out to the J.A. Jones Company called for wooden handrails, which were in fact installed within two weeks after the accident.

Appellant points out that Charles Morgan, Chief of Safety Engineering, for TVA Construction Division, stated in a deposition in this case as follows:

Q. 99 Under the contract the safety man could have ordered that immediately that date no further cable should be used. Isn't that correct?

A. It would depend again on the situation. Normally in TVA that would not be done except in a very eminent [sic] danger situation maybe and the other way it would have to be done would be through our purchasing people.

Q. 100 How do you define an eminent danger situation?

A. An eminent danger is a condition that exists which may likely cause a serious or fatal injury.

Q. 101 That's a fairly widely accepted principle in engineering basically isn't it?

A. That's correct.

Q. 102 Do you recall the height of the precipitator or the platform?

A. No I do not.

Q. 103 Any height above twenty feet is an area that poses eminent danger to workmen in an improperly guarded area. Is that accepted in safety engineering?

A. I would agree that's generally accepted.

Q. 104 The use of the cable was an unacceptable form of railing. Isn't that correct?

A. It was unacceptable by TVA standards right.

Q. 105 As a result of the memorandum of May 27th or May 28th at some point later pursuant to TVA's direction wooden handrails were used to replace the cable in question. Isn't that correct?

A. Yes.

(Jt.App. pp. 208–209).

It is appellant's earnest contention in this case, which contention was rejected as a matter of law by the District Judge's summary judgment order in favor of TVA, that TVA had, by its inspection and its instruction to correct, assumed the duty of enforcing the safety regulations.

At appellate argument of this case, appellant's counsel was asked whether the TVA inspector, on noting the use of cable guardrails, had a duty to stop the job immediately until corrections were made. The response was affirmative.

TVA contends that, as a matter of Kentucky law, it may not be held liable for its own negligence to employees of independent contractors. TVA relies on *King v. Shelby Rural Electric Cooperative Corp.*, 502 S.W.2d 659 (Ky.Ct.App.1973), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974). *King*, however, held only that a general contractor could not be held liable to employees of an independent contractor engaged in inherently dangerous work on the basis of the non-delegable duty doctrine. As the Kentucky Supreme Court has since made clear, a general contractor may be held liable to employees of an independent contractor on the basis of the general contractor's *own* negligence. *Caskey v. Hammonds Construction, Inc.*, 536 S.W.2d 449, 451 (Ky.1976). Appellant's theory is not premised on the non-delegable duty doctrine, but on allegations regarding TVA's own negligence in failing to require immediate correction of the safety hazard created by use of cable guardrails.

Although not so stated, appellant's theory appears to be premised on the "good Samaritan" doctrine: one who voluntarily assumes a duty must perform that duty with reasonable care. This court has held that the Kentucky Supreme Court would adopt the principles of liability as stated in Restatement of Torts, Second § 324A. *See Raymer v. United States*, 660 F.2d 1136, 1142–1143 (6th Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982). Section 324A reads as follows:

> **§ 324A. Liability to Third Person for Negligent Performance of Undertaking**
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as

necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

■ TVA's duty, if any, was simply to exercise reasonable care. The written and verbal instruction to cease using cable guardrails was a reasonable response to the hazard under the circumstances. TVA had no reason to foresee that Jones would continue using and constructing the unsafe cable guardrails.

Analyzing each of the three liability conditions of § 324A, we find no evidence that TVA's warnings to Jones "increase[d] the risk of harm" under (a) or undertook to perform a duty to correct the hazard which it pointed out to the contractor under (b) or that the harm was suffered because of the reliance of the deceased or Jones upon any TVA undertaking under (c).

Appellant's reliance on *Haddad v. Louisville Gas & Electric Co.*, 449 S.W.2d 916, 919 (Ky.Ct.App.1970) for the proposition that TVA had a duty completely and immediately to abate the hazard fails for the same reasons that such reliance failed in *Raymer v. United States*, 660 F.2d at 1140–1141:

In *Haddad v. Louisville Gas & Electric Co.*, *supra*, the Kentucky court held that a public utility had a "duty to do something protective" when its employee found a highly dangerous concentration of carbon monoxide while inspecting a floor furnace inside the residence of a customer. 449 S.W.2d at 918. The court made clear that the gas company had no duty to make an inspection or to "police" appliances generally but that the "duty

grows out of an inspection which the company has chosen to make." *Id.* The plaintiffs argue that *Haddad* establishes the principle that a private individual who undertakes an inspection of the premises of another is liable under Kentucky law for failing to abate a dangerous condition discovered during the inspection if that condition results in injury or damage.

\* \* \* \* \* \*

This analysis indicates to us that *Haddad* would not be applied as broadly as the plaintiffs contend. The humane rule which *Haddad* establishes is that when members of the general public enlist the services of specially qualified persons to determine whether potentially dangerous substances do in fact constitute a danger, the persons so engaged have a duty to take some steps to abate any dangers found to exist. *Haddad* and the authorities upon which it was based all have as underlying premises danger from a substance whose presence is not obvious to a layman, an undertaking to inspect or install by one having superior knowledge of the dangerous substance, and reliance on the expertise of the person who assumes the undertaking.

TVA's duty, if any, was to exercise reasonable care. We find no evidence in this record from which a jury could have found that TVA failed in performing that duty.

The judgment of the District Court in favor of TVA is affirmed.

WELLFORD, Circuit Judge, concurring:

I believe that the only proper basis for jurisdiction in this case was based upon a federal question, *not* diversity, for the reasons and on the basis of the authority herein indicated. If this were properly deemed a diversity case, however, I am in substantial agreement with Judge Edwards' conclusions set out in his opinion.

First, if the rules of diversity applied in this case, Kentucky law would be applicable. *Erie Railroad v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

I agree further that TVA exercised reasonable care under the circumstances. TVA's instructions given to the independent contractor, Jones, constituted a reasonable response to the hazard discovered prior to the plaintiff's distressing accident. TVA, indeed, had no basis for foreseeing that Jones would disregard its instructions, and, I believe, it neither had nor assumed a responsibility to Jones' employees under the contractual arrangement or otherwise for Jones' safety oversights. Accordingly, I am also in agreement with Judge Edwards' rationale that, to the extent Restatement of *Torts*, Second, § 324A is relevant here, basic principles of tort liability would not render TVA liable to Thomas. Furthermore, *Haddad v. Louisville Gas & Electric Co.*, 449 S.W.2d 916 (Ky.Ct.App. 1970), provides no support for appellant's claims of liability against TVA under the circumstances.

I write further to set out my views on the basis of jurisdiction and on the importance of the contractual provisions in this case.

Whether the basis for jurisdiction is questioned previously or on appeal, determination of proper jurisdiction must first be decided by a federal court. We approved such a determination in an earlier case involving TVA. *See Jackson v. Tennessee Valley Authority*, 462 F.Supp. 45, 49–55 (M.D.Tenn.1978), *aff'd*, 595 F.2d 1120, 1121 (6th Cir.1979). *See also Monsanto Co. v. Tennessee Valley Authority*, 448 F.Supp. 648, 650 (N.D.Ala.1978). These cases hold that the question of TVA liability is a federal question.

I believe that the issue before this court must be precisely understood. There should be no question that Jones Construction Co. would ordinarily be the party possessing the exclusive duty of care toward its own employees in fulfilling its end of a contractual bargain with another party. There is also no doubt that Jones Construction Co. was proximately responsible for this tragic accident involving its employee. Thus the only issue here is whether TVA's actions represented assumption under the contract of a special duty of care toward the deceased and his co-employees.

The pertinent facts of the contract between Thomas' employer, J.A. Jones Construction Company ("Jones"), and TVA are set out in Judge Edwards' opinion. I would emphasize the following language specifically applicable to the circumstances of this case:

The Contractor [Jones] shall be an *independent Contractor for all purposes in this contract,* and all persons engaged in carrying out any of the Contractor's obligations shall be the servants of the Contractor ... not ... TVA.

The *Contractor shall be responsible* for enforcing regulations in accordance with the American National Standards Institute and other recognized national codes.... Any work attempted to be made or actually accomplished in violation of any existing applicable law ... or approved safety practice shall be the *Contractor's sole responsibility.*

The Contractor shall cooperate fully with TVA's safety representatives.... (Emphasis added).

The contract language is unambiguous and precise that Jones is solely responsible for safety practices and violations of safety standards. TVA had every right to rely upon Jones' cooperation with TVA's representatives when, as, and if the latter discovered what was considered to be a safety problem. This court, moreover, in *Feyers v. United States*, 749 F.2d 1222, 1226 (6th Cir.1984), has recently held that the government is not liable in tort to a third party employee for any alleged failure by the government regarding inspection and provision of safety training in a railyard where a contractor-operator had been delegated safety responsibility. *Feyers* relied in part on *United States v. U.S.A. Empresa de Viacao Aerea Rio Grandense,* — U.S. —, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), wherein the Federal Aviation Commission was held not liable for an alleged failure to inspect adequately certain aspects of aircraft design resulting in alleged injury to a third party. Even more recent-

ly a panel of this court addressed a plaintiff's argument "that the T.V.A. and its employees had a duty to insure plaintiff's safety as an employee of an independent contractor," and affirmed a Tennessee district court's decision that, as a matter of law, plaintiff could not recover from TVA for its alleged breach of "duty to inspect the site for safety hazards." *Marsh v. Tennessee Valley Authority,* 765 F.2d 145 (6th Cir.1985). This court also held to the same effect on the question of a governmental entity's liability for alleged failure to inspect for building code violations resulting in injury to purchaser of a building. *See Texaus Investment Corp., N.V. v. Haendiges,* 761 F.2d 252 (6th Cir.1985) (no municipal liability due to lack of specific duty).

The agreement between TVA and Jones was clear as a matter of law that TVA did *not* assume a duty for safety violations on the project, for which Jones was *solely responsible.* I see no difference between the plaintiff's claim here that TVA was negligent with respect to a safety inspection at the jobsite under a contract, and the claims in other cases of negligent failure to inspect.

This court as well as other circuits have interpreted such contractual language as reserving "*'the right, but not the duty'* [of the government] to inspect the work and the contractor's equipment." *Grogan v. United States,* 341 F.2d 39, 43 (6th Cir. 1965), *affirming and quoting language of the district court opinion* in 225 F.Supp. 821, 826 (W.D.Ken.1963); *See, e.g., Cannon v. United States,* 328 F.2d 763, 765 (7th Cir.1964); *Kirk v. United States,* 270 F.2d 110, 117 (9th Cir.1959); *see also Harris v. Pettibone,* 488 F.Supp. 1129, 1136 (E.D.Tenn.1980); *Musgrave v. Tennessee Valley Authority,* 391 F.Supp. 1330, 1332 (M.D.Ala.1975); *Rogers v. Tennessee Valley Authority,* No. 1–76–320 (E.D.Tenn. March 3, 1977) (citing and following *Grogan* on contractual reservation of right but no assumption of duty).

Whether there is a duty owed by TVA to a plaintiff for alleged negligence is a ques-

tion of law, and was properly decided as a matter of summary judgment by the district court. *Dollar v. Haralson County, Georgia,* 704 F.2d 1540, 1543 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983); *Stratioti v. Bick,* 704 F.2d 1052, 1054 (8th Cir.1983); W. Prosser, *Handbook of the Law of Torts* § 37 at 206 (4th ed. 1971); 57 *Am.Jur.2d* "Negligence" § 36 at 384 (1971). The record in this case reflects that TVA had not inspected the guard rails at the particular locale where Thomas fell. Thomas does not even claim that TVA negligently failed to warn about a safety condition of which it had particular knowledge at the specific place of the accident. *Cf. Lowe v. United States,* 466 F.Supp. 895, 897 (M.D.Fla. 1979), *aff'd,* 611 F.2d 76 (5th Cir.1980). Appellant also concedes in her brief that "decedent did not perform work that was inherently dangerous."

There was simply no basis for Thomas to rely upon TVA under the circumstances, for safety requirements on the project. There was no legal duty imposed upon TVA based upon its prior knowledge of the condition of the guardrails at the place Thomas fell.

Kentucky law, even if applicable, is not to the contrary regarding the issue of a contractual duty. *King v. Shelby Rural Elec. Co-Op Corp.,* 502 S.W.2d 659 (Ky. App.1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974), recognized the "general rule that the employer is not liable for physical harm caused to another by the act or omission of an independent contractor." *Id.* at 660 (citing Restatement of Torts, Second § 409). In that case the court noted that workmen's compensation laws would generally cover and protect the injured employee of an independent contractor. *Id.* at 662. The later *Caskey v. Hammonds Construction, Inc.,* 536 S.W.2d 449 (Ky.1976), case involved an employee of a subcontractor *not* covered by workmen's compensation insurance. In *Caskey* there was no contractual agreement between the owner and the independent contractor, as here, that imposed sole

responsibility upon the independent contractor for safety violations. I would find no duty owed here by TVA to a Jones employee in respect to a safety hazard for which his responsible, bonded employer carrying workmen's compensation insurance had "primary" safety responsibility. *See Raymer v. United States,* 660 F.2d 1136, 1143 (6th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982).

It is for these reasons, in addition to those stated by Senior Circuit Judge EDWARDS, that I would AFFIRM the judgment of the district court.

MERRITT, Circuit Judge, dissenting.

The plaintiff-decedent fell to his death from a TVA tower because of a defective guard rail on TVA construction work performed by J.A. Jones. TVA inspection people on the job had previously found two hazardous guard rails near the place where plaintiff's decedent fell, and TVA warned the contractor that the guard rails were not up to safety standards. TVA had an engineer on the job. Its agents on the job gave directions to J.A. Jones and supervised the construction work. Even assuming that TVA has no vicarious liability arising from J.A. Jones' negligence because J.A. Jones was an independent contractor, it is clear that TVA had undertaken to remedy hazardous conditions at the job site and did discover the dangerous situation and did take some steps to remedy it—namely, to instruct J.A. Jones to correct the problem. After a week, J.A. Jones had done nothing, TVA had done nothing further and plaintiff-decedent, arguably, was killed as a result. I believe these facts present a jury issue under the Good-Samaritan-duty-to-act principles recited by the Court and that summary judgment was inappropriate. The facts support an inference that TVA, having undertaken to act, failed to act *promptly* and effectively to get the defect corrected and that TVA's agents were simply covering themselves by writing the memo a week earlier. The law requires an owner's agents who recognized a hazard on

job to do more than cover themselves. It requires reasonably effective and prompt action. Thus a disputed factual issue of negligence is raised, and the Seventh Amendment guarantees a plaintiff's right to a jury trial in federal courts. I therefore dissent from the grant of summary judgment on the issue of TVA's negligence.