Francis B. HAYDEN, Plaintiff,

v.

RCA GLOBAL COMMUNICATIONS, INC., American Communications Assoc., Communication Trade Division, and American Communications Assoc. Local Number 9, Defendants.

No. C–77–0008–WWS.

United States District Court, N. D. California.

Jan. 16, 1978.

Stuart E. Patt, San Francisco, Cal., for plaintiff.

Alexander R. Imlay, Marvin J. Colangelo, Kerner, Colangelo & Imlay, Samuel L. Holmes, Angell, Adams & Holmes, San Francisco, Cal., for RCA Global Communications, Inc.

Richard L. Patsey, Gladstein, Leonard, Patsey & Andersen, San Francisco, Cal., for American Communications Assn., etc., and

American Communications Assn. Local No. 9.

## MEMORANDUM OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

WILLIAM W SCHWARZER, District Judge.

Plaintiff sues his former employer, RCA Global Communications, Inc. ("RCA") and his former union representatives, American Communications Association ("ACA") and American Communications Association Local Number 9 ("Local 9"), for their alleged breach of the collective bargaining agreement between them. Plaintiff also sues his former union representatives for alleged breach of their duty of fair representation. Defendants have moved for summary judgment on plaintiff's claims.

After RCA installed certain automated equipment, it announced plans in October 1975, to move certain work operations from San Francisco to New York City. As part of its reorganization of the San Francisco office, it planned to eliminate forty-four positions there and transfer certain employees to New York City. Plaintiff was one of the employees affected by these plans. RCA took the position that these plans were authorized under the mechanization clause of the operative collective bargaining agreement.[1] Rather than go to arbitration on the applicability of this clause to RCA's plans, Local 9 decided it could best protect its members' interest by negotiating with RCA to retain some of the threatened jobs in San Francisco.

As a result of the negotiations which took place in November 1975, and January 1976, RCA and the union agreed to reduce the number of affected positions to forty, to keep ten employees in their current positions in San Francisco, and to find work for nineteen other affected employees somewhere in California rather than New York City. Eleven employees voluntarily retired. Though plaintiff was one of the ten most senior employees affected by RCA's reorganization plans, the agreement between Local 9 and RCA provided that he would be transferred to Los Angeles to a slightly higher paying job as a C/RT operator. The agreement provided that Mr. Geduldig, a less senior employee than plaintiff, would retain his current position of check clerk in San Francisco, because Geduldig had a handicap which the union thought might interfere with his ability to perform the C/RT job in Los Angeles.

Plaintiff objected to transfer to Los Angeles and demanded that he rather than Geduldig be allowed to retain one of the remaining positions in San Francisco. Local 9 and RCA changed their agreement to make plaintiff one of the ten who kept their positions in San Francisco. Subsequently, RCA agreed to create a C/RT position in San Francisco for Geduldig. The union did not insist that the slightly higher paying C/RT job should be given to plaintiff as the more senior employee rather than to Geduldig, because it did not want to upset the agreement which had been reached.

Union representatives may agree with the employer to modify or amend an

---

1. Relevant sections of the mechanization clause (Section 18) of the collective bargaining agreement in effect October 1975, provided:

"(a) The purpose of this Section is to protect regular employees of the Company who have completed their initial probationary periods at times when mechanization changes are made, but, when such mechanization changes have been made, this Section does not in any way interfere with the normal right of the Company to refrain from making replacements of employees who may leave the service for any reason or be transferred to positions not covered by this agreement.

"(b) Mechanization changes covered by the provisions of this Section shall be those resulting from the introduction of mechanical, electrical, or technical apparatus into the Company's operations.

"(c) The Company may transfer employees affected by such mechanization changes, without reduction in pay, from one classification to another, or from one office to another in the same city, or at its own expense and without loss of paid time to the employee concerned from one office or station to another, if by so doing it can make better use of its facilities or personnel."

existing collective bargaining agreement even if this affects the seniority rights of some employees. *See Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *Southerlan v. Office & Pro. Emp. Int. U. Loc. No. 277,* 396 F.Supp. 1207 (N.D.Tex.1975). The affidavits from RCA's bargaining representative and from an officer of Local 9 show that defendants agreed to a settlement of the controversy concerning respective rights of RCA and the employees under the mechanization clause and the job vacancy clause.[2] That amendment did not have to be approved by the members of Local 9, *see Coleman v. Tennessee Valley Trades & Labor Coun.,* 396 F.Supp. 671, 677 (E.D.Tenn.1975), and it was proper even though not reduced to writing. *Southerlan,* 396 F.Supp. at 1212. By that amendment plaintiff lost whatever right he may have had under the job vacancy clause to the C/RT position Geduldig assumed.

 No breach of the duty of fair representation occurs unless "a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). In this case, the undisputed facts show that Local 9's representatives bargained fairly and well on behalf of all their members to minimize the disruption RCA's reorganization plan would have had on their lives. Plaintiff was able to retain his job in San Francisco, unlike many of his fellow workers. His complaint is that his representatives did not put his interests ahead of all his other co-workers. They had no obligation to do so. *See Huffman,* 345 U.S. at 338, 73 S.Ct. 681; *Southerlan,* 396 F.Supp. at 1212–1213.

 Because Local 9 and RCA properly amended the collective bargaining agree-ment, plaintiff's grievance that the job given to Geduldig should be plaintiff's is without merit. Thus, the failure of Local 9 and RCA to process his grievance cannot be a breach of their duty of fair representation of plaintiff. *See, e. g., Patrick v. International Union of Operating Engineers,* 456 F.2d 672 (9th Cir. 1972).[3]

 It is appropriate to add that cases of this nature implicate important policies in the field of labor-management relations. While collective bargaining representatives have a duty not to act arbitrarily or in bad faith toward members of the unit, they must have discretion adequate to represent those members effectively. If the exercise of that discretion were to become the subject of judicial review, requiring the union and the employer regularly to defend their actions under a collective bargaining contract in court, the effectiveness of the bargaining process contemplated by Congress in the Labor-Management Relations Act would be jeopardized. *Cf., Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Summary judgment is therefore a particularly appropriate remedy in cases of this sort where plaintiff has failed to present a genuine issue of fact concerning bad faith or discrimination.

For the reasons stated, summary judgment for defendants is granted.

IT IS SO ORDERED.

---

**2.** Section 14(a) of the job vacancy clause of the collective bargaining agreement in effect October 1975, provided:

"(a) The selection of regular employees to fill job vacancies within the classifications covered by this Agreement shall be made by the Company on the basis of adequate ability, suitability, and seniority."

**3.** The language of Section 14(a), quoted above, does not in any event support plaintiff's contention that seniority gave him an absolute right to the promotion. *See, Thomas v. Ford Motor Co.,* 396 F.Supp. 52, 60–61 (E.D.Mich. 1973).