Francis SMITH, Plaintiff,

v.

JOSEPH E. SEAGRAM & SONS, INC. and International Brotherhood of Firemen & Oilers Local 320, Defendants.

Civ. A. No. C 84–0969–L(A).

United States District Court, W.D. Kentucky, Louisville Division.

Sept. 26, 1985.

J.D. Raine, Sr., Louisville, Ky., for plaintiff.

Edwin S. Hopson, Glenn A. Cohen, Louisville, Ky., Wyatt, Tarrant & Combs, Mi-

chael S. Wolly, Washington, D.C., Herbert Segal, Louisville, Ky., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALLEN, Chief Judge.

This hybrid § 301 action, 29 U.S.C. § 185, is submitted to the Court upon the parties' cross motions for summary judgment. For the reasons set out below, summary judgment will be granted for the defendants.

This action was originally filed in Jefferson Circuit Court and subsequently removed to this Court. Plaintiff was employed by defendant Joseph E. Seagram & Sons [hereinafter "Seagram"] on January 19, 1972 and remained employed until his lay-off on April 19, 1983. Plaintiff is also a member of defendant International Brotherhood of Firemen and Oilers Local 320 [hereinafter "Union"], which had entered into a collective bargaining agreement with Seagram. Plaintiff alleges that he was "passed over on the seniority list" in violation of both the collective bargaining agreement and the prevailing practice of the workplace. More specifically, he alleges that an employee with less seniority was retained in a post-shutdown residual work force at Seagram's plant in Louisville, Kentucky. Plaintiff also alleges that the Union processed his grievance in bad faith and in an arbitrary, discriminatory, and perfunctory manner.

Plaintiff was first employed by Seagram at its plant in Fairfield, Kentucky, where he worked as a fireman from January 1972 until he was laid off in July 1973. In January 1974 he began working at Seagram's facility in Louisville, Kentucky, where he was a relief helper for three months, then a permanent helper from April 1974 until December 1975, and a fireman from that date until July 6, 1983 when the plant was closed with only a small maintenance work force remaining.

The Master Agreement between the Union and Seagram covers employees at all of Seagram's plants. The provisions governing seniority are found in Article IX, which in Section 1 provides that "[s]eniority of employees shall mean length of service of such employee beginning with the last date the employee began work with the Employer, in connection with work under the jurisdiction of the Union." Article IX further provides in Section 4:

> In the event at any time or times because of production consideration fewer employees shall be needed, they shall be laid off in the inverse order of seniority. When the Employer again adds to the number of employees, those laid off shall be again reemployed in the order of their seniority. In the event of promotion, seniority shall govern, efficiency being equally considered.

The Agreement also contains a grievance procedure which, in essence, requires any grievance to be brought to the attention of the company within five days after its occurrence. If the Union and the company are unable to reach an agreement, the question is then referred to the president of the Union and the company's manager of labor relations. If they are unable to agree, the matter is referred to an arbitrator, who is selected by both parties within five days. If they are unable to agree upon the arbitrator within ten days, the Federal Mediation Service appoints an arbitrator.

Although the Master Agreement has been interpreted by the Union and the company on a nationwide basis to require seniority on a plantwide basis, in the Louisville plant the practice for thirty-five years prior to the end of 1982 had been to recognize separate seniority on a departmental basis. Thus, Union employees working as oilers held separate rights from, for example, firemen working in the firehouse; and a transfer from one classification to another resulted in loss of seniority in the former classification.

In late 1982 Seagram announced its intention to shut down the Louisville facility. In January 1983 it agreed to negotiate with the Union regarding the impact of its decision to phase out and sell its Louisville plant. Following these negotiations, Seagram and the Union signed a Shutdown

Agreement on March 8, 1983. This agreement, among other provisions, provided for a small and efficient residual work force to perform such tasks as were required when the plant became idle. An important provision found in paragraph 4.10 states: "Previous departmental agreements are voided by this agreement. Employees will be selected for this work force on the basis of seniority and ability to perform the available job duties therein."

Paragraph 3 of the same agreement provides, in essence, that bargaining unit employees not needed for work would be terminated in accordance with the provisions of the collective bargaining agreement as modified. Paragraph 8 provides that the Shutdown Agreement constitutes the complete agreement between the parties and resolves all issues which could have been raised by the Union or any employee represented by the Union as to the shutdown. It also states that the term "collective bargaining agreement" refers to the agreement effective September 1, 1981 through August 31, 1984, that is, the Master Agreement.

Following the execution of the Shutdown Agreement, representatives of the Union and Seagram met; and the company's representatives explained that the responsibilities of the residual work force combined both firemen and oiler functions. The company then offered positions in the residual work force based on plant seniority without regard to departments. The Union agreed to this procedure.

Following this meeting, the company offered its firemen and oilers a choice of a position in the residual work force. Twelve persons were listed, but eight of them elected to take severance pay. This left four persons who were senior to the plaintiff in plant seniority: E.D. Milliner, then D.J. Swallows, then L.R. Jackson and P.L. Brown. The record reflects that Jackson began work in the Louisville plant on October 22, 1973 as a fireman but on June 30, 1975 became an oiler. Under the previous practice of departmental seniority, he would have been junior in seniority to plaintiff. However, under plant seniority dates, he was senior.

Plaintiff and P.L. Brown, who was senior to plaintiff but junior to Jackson as a result of the plantwide principle, filed a written grievance. The Union representative informed plaintiff of a meeting to be held to discuss Smith's grievance, but Smith did not attend due to a ruptured disc. Brown, however, did meet with the Union and Seagram representatives. In the discussion regarding both Smith and Brown, Seagram took the position that the plant seniority was set out in the Master Agreement and departmental seniority was explicitly voided by paragraph 4.10 of the Shutdown Agreement. Following this meeting, the Union advised plaintiff that his grievance would not be taken to arbitration.

Plaintiff is aggrieved because the former practice of departmental seniority was nullified by the actions of the company and the agreement of the Union thereto. However, plaintiff does not allege personal bias or animosity on the part of the Union; but rather, he alleges that it represented him in a perfunctory manner.

The Union sets forth three reasons for not taking the matter to arbitration. The first is its reliance on the language contained in the Master Agreement. The second is the fact that the residual work force was to perform combined firemen and oiler duties, thus justifying the application of the Master Agreement. The third is the company's reliance on the Shutdown Agreement, which abrogated the practice of departmental seniority at the Louisville plant.

The authorities are clear that a Union may bargain with the employer and enter into agreements which affect already accrued seniority rights. See *Ekas v. Carling Nat. Breweries, Inc.*, 602 F.2d 664 (4th Cir.1979); *Ryan v. New York Newspaper Printing*, 590 F.2d 451 (2nd Cir.1979); *Hayden v. RCA Global Communications, Inc.*, 443 F.Supp. 396 (N.D.Cal.1978).

In *Ekas*, Carling maintained two facilities, the Beltway and the Dillon Street plants. Although the employees at both locations were represented by the same union, separate bargaining agreements

were negotiated for each plant. Neither agreement provided for the integration of the seniority lists of the two plants in the event of a consolidation of operations nor was any provision made for the amendment of the seniority terms to allow the integration.

When Carling decided to integrate its two plants, it entered into a memorandum of understanding with the union which provided for the dovetailing of the seniority lists on a one-to-one basis, beginning with the senior Dillon Street employees. The agreement also specified that employees with ten or more years seniority would be preferred over those with less than ten years seniority for purposes of lay-off and recall.

The Fourth Circuit Court of Appeals held that even in the absence of an express provision, a union and employer may assent to the modification of the terms of their existing collective bargaining agreements. The Fourth Circuit also stated that where a union and an employer have renegotiated collective bargaining agreements covering a group or several groups of employees, the sole inquiry is whether under all the circumstances the union has considered the interests of *all* of its members.

As the Supreme Court stated in *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953):

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such difference does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

In *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), although the Supreme Court recognized that the employees of one company or the other would suffer due to a dovetailing agreement, it

nonetheless held that by choosing to integrate seniority lists based upon length of service in either company, the Union had not acted upon capricious or arbitrary factors, but rather, had acted upon wholly relevant factors.

Here, the evidence clearly establishes that the Union acted upon relevant considerations, not capricious or arbitrary ones, when it entered into the Shutdown Agreement with Seagram. While this agreement resulted in another employee having greater seniority than the plaintiff, it nonetheless was a reasonable and fair resolution of the unfortunate circumstances resulting from the company's decision to close its Louisville plant. Thus, as the plaintiff has shown neither a violation of the collective bargaining agreement nor a breach of the Union's duty of fair representation, summary judgment has been entered this day for the defendants.