668 F.Supp. 1298 (1987)
John T. HAGAN, et al., Plaintiffs,
v.
KAISER ALUMINUM & CHEMICAL CORPORATION, et al., Defendants.
No. 85-1310 C (5).
United States District Court, E.D. Missouri.
August 20, 1987.
Jay E. Sushelsky, St. Louis, Mo., for plaintiffs.
Bryan, Cave, McPheeters & McRoberts, Michael P. Burke, JoAnne Clark Kuhns, St. Louis, Mo., for defendants Kaiser and Kaiser Refractories.

ORDER
LIMBAUGH, District Judge.
This matter is before the Court on cross-motions for summary judgment. The case involves determination of the validity and propriety of an amendment to a pension plan that served to eliminate certain contingent early pension benefits provided to members of the plaintiff class. Plaintiffs are former employees of defendant Kaiser Aluminum and Chemical Corporation (Kaiser) who were employed at Kaiser's Mexico, Missouri refractories plant. Their cause of action arises out of their status as participants and beneficiaries under the Kaiser Refractories Mexico Division Pension Plan (the Plan). In December 1984, the Plan was amended so as to eliminate provisions pertaining to a type of early retirement benefit known as a "75/80" retirement pension. This benefit, which was available to employees at a given combination of age and years of service, was contingent upon a permanent shutdown of the employee's plant, department, or sub-division *1299 or by reason of a layoff or physical disability.
Plaintiffs were at all times members of Local 660-B of the Aluminum, Brick and Glass Workers International Union, AFL-CIO, CLC, which was a party to a collective bargaining agreement with Kaiser pertaining to wages, pension, working conditions and related employment matters. The Plan is an employee pension benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA)", 29 U.S.C. § 1002(2) and (3). Kaiser at all times was the administrator and sponsor of the Plan.
The claims at issue here arose out of a sequence of events which began around September of 1984 and continued through the end of that year. In summary, Kaiser announced plans in early September to sell its Refractories Division to a new company which would be organized and run by the existing management group of the division. One of the features of the proposal was that the new companywhich was eventually named National Refractories and Minerals Corporation (National)would use an Employee Stock Ownership Plan (ESOP) so that it would eventually be owned almost entirely by its own employees. As part of this sale proposal, the hourly workers at the various Refractories Division locations, including the Mexico Plant, voted on the basic concept of the ESOP proposal.[1] In September, after each location voted to accept the proposal, Kaiser and National proceeded toward finalizing the transaction by December 31, 1984.
On December 20, 1984, as the final arrangements were being made to organize the ESOP and complete the sale of the refractories division, the officers of Local 660-B and Wayne Murray, a vice president of the international union, were called to a meeting with Kaiser officials. The union representatives were presented with proposed revisions to both the existing pension plan and the collective bargaining agreement then in force which Kaiser insisted were necessary if the contemplated ESOP transaction was to be finalized. The effect of the pension plan amendment set forth by Kaiser was to eliminate the 75/80 retirement pension plan provisions. According to plaintiffs, Kaiser threatened to close the Mexico plant in 11 days if the amendment was not accepted by the union.[2] Murray and the officers of Local 660-B advised Radakovich that the proposed pension revision needed to be presented to the rank and file of the local for a vote. Mr. Radakovich apparently rejected this, however, and stated that the document had to be signed at once and that Kaiser was not willing to abide presentation of the issue to the rank and file.[3]
The officers of the local and the international vice-president initially refused to sign the plan revisions proposed by Kaiser. Later that day, however, the Local 660-B committee members were summoned to a meeting at which the Mexico Plant Manager, Charles Duckworth, advised that he had *1300 received a call from Kaiser's headquarters directing him to shut down the Mexico plant on December 31, 1984 if the local refused to agree to the proposed pension agreement revisions. The following day, December 21, 1984, the members of the local union committee, international vice-president Murray and representatives of Kaiser met at the Bridgeton, Missouri office of the international union. The local union officials still refused to sign the pension plan amendment. Wayne Murray, however, signed the revision under protest on behalf of the local and received a "hold harmless" agreement running from Kaiser to the international union and various locals that had contracts at Kaiser refractories contemplated under the ESOP.

Conclusions of Law
Plaintiffs' cause of action is based on § 301 of the Labor Management Relations Act alleging a breach of a collective bargaining agreement covering their employment by their former employer, Kaiser. Plaintiffs also allege certain violations of ERISA, 29 U.S.C. § 1001 et seq. As pointed out by both sides in this case, the critical issue before the Court on the pending cross-motions for summary judgment is the validity vel non of the amended pension agreement and its effect of revoking certain contingent early retirement benefits as outlined above. For the reasons that follow, the Court has determined that the amendment was effective and that defendants have committed no offense actionable under either § 301 or the pertinent provisions of ERISA.
To begin with, it is clear that Wayne Murray's acceptance of the company's proposed pension amendment was effective to bind the local under the concepts of both actual and apparent authority. Section 301 of the Labor Management Relations Act provides that "any labor organization which represents employees in an industry affecting commerce as defined in this chapter ... shall be bound by the acts of its agents." 29 U.S.C. § 185(b). The United States Supreme Court has held that a union constitution is a contract between a parent union and its locals which can be enforced in federal court. United Association of Journeymen and Apprentices, AFL-CIO v. Local 334, 452 U.S. 615, 624, 101 S.Ct. 2546, 2551, 69 L.Ed.2d 280 (1981). As applied here, it is plain that the express terms of the International Union Constitution explicitly provide that the International Union has whatever actual authority is necessary to enter into binding agreements on behalf of its local unions.
Article II, Section 2 of the Constitution states that one of the objects of the International Union is "to negotiate equitable Labor Agreements on [its local unions'] behalf." Article XV, Section 1, explicitly provides: "The International Union shall negotiate all Labor Agreements on behalf of the Local Unions." Leaving no doubt, this section goes on to say: "If a Local Union is granted permission to negotiate its Labor Agreement, such agreement must be approved and signed by the International President or his designated Representative." As to the local union, Article I of its Constitution and By-Laws expressly provides:
This Local Union hereby adopts as its Constitution, the Constitution of the Aluminum Brick & Glass Workers International Union, and incorporates herein, by reference, as though fully set forth herein, all such provisions of said Constitution as it may be interpreted, modified and/or amended from time to time.
(Ex. FF, p. 1).
Guided by the Supreme Court's holding that the International Constitution is an enforceable contract between the International Union and the Local Union, it follows that Wayne Murray had actual authority to enter into the amended pension agreement on behalf of the local union.[4] In addition, under principles applied in Anderson v. Ideal Basic Industries, 120 LRRM 2039 (D.C.Tenn.1985), it is very likely that Murray *1301 also had apparent authority to act on behalf of the local union in these circumstances.[5]
That the amended pension plan did not require ratification by the local membership does not appear to be significant. There is no inherent right or requirement of ratification of a proposed agreement absent an express requirement to that effect. Confederated Independent Unions v. Rockwell-Standard Co., 465 F.2d 1137, 1140 (3rd Cir.1972), Coleman v. Tennessee Valley Trades and Labor Council, 396 F.Supp. 671, 677 (D.C.Tenn.1975). Accordingly, it is clear that absent a disqualifying provision under ERISA, Wayne Murray's signature on the amended pension plan was both valid and binding on the local union.
Plaintiff's ERISA claim is based on §§ 502(a)(1)(B) and 502(a)(3) of that act, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3).[6] Plaintiffs contend that Kaiser, in forcing an amendment to the existing pension plan, violated the general fiduciary duties set forth at 29 U.S.C. § 1104(a)(1) since it was the administrator of the plan. Basically, plaintiffs are asserting that Kaiser, acting in a fiduciary capacity toward the beneficiaries of the pension plan, should not have engaged in the type of conduct involved in obtaining the pension plan amendment.
Although a certain dual loyalty may inherently exist when an employer acts as an administrator of its own pension plan, ERISA specifically allows for this dual role by providing that an officer, agent or other representative of an employer may serve as such a fiduciary. 29 U.S.C. § 1108(c)(3). See also Donovan v. Bierwirth, 538 F.Supp. 463, 468 (D.C.N.Y.1981), aff'd. as modified (on other grounds), 680 F.2d 263 (2nd Cir.1982), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). Moreover, it is established that this dual role does not restrict a company from engaging in reasonable business behavior in collective bargaining negotiations which affect prospective pension benefits. Dhayer v. Weirton Steel Division of National Steel Corp., 571 F.Supp. 316 (D.C.W.Va.1983), aff'd., 724 F.2d 406 (4th Cir.1983), cert. denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).
In Sutton v. Weirton Steel Division of National Steel Corp., 567 F.Supp. 1184 (D.C.W.Va.1983), aff'd. 724 F.2d 406 (4th Cir.1983), cert. denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984), a case remarkably similar to the case at bar, the district court held:
When acting on behalf of the pension fund, there is no doubt that [an employer] must act solely to benefit participants and beneficiaries. However ... when a corporate employer negotiates the terms of sale of a division, whose employees are participants in a pension plan, the negotiations that affect the terms and conditions of future pension benefits (at least those that are not protected by ERISA's vesting and nonforfeitability provisions), do not implicate fiduciary duties as to the pension fund.... [T]he mere fact that a company has named itself as pension plan administrator or trustee does not restrict it from pursuing reasonable business behavior in negotiations concerning pension benefits not otherwise affected by the requirements of ERISA.
567 F.Supp. at 1201. On appeal, the Third Circuit upheld the district court, holding:
Congress, however, has not prohibited an employer who is also a fiduciary from exercising the right accorded other employers to renegotiate or amend, as the case may be, unfunded contingent benefits payable before normal retirement age. The changes, accomplished in this manner, are not to be reviewed by fiduciary standards.
724 F.2d at 411. The 75/80 retirement benefit involved in this case falls into the same category of non-accrued benefits as those discussed in Sutton.
*1302 Plaintiffs allege that Kaiser violated 26 U.S.C. § 411(d)(6) by "eliminate[ing] and ... refusing to pay to plaintiffs and to proposed class members accrued benefits under the 75/80 Retirement Pension provisions of the plan."[7] The weight of authority, however, construing § 411(d)(6) as it applied to the 1984 plan year[8] is that early retirement benefits, such as the 75/80 benefit here, did not fall within the prohibition against reduction or elimination of "accrued benefits". Bencivenga v. Western Pennsylvania Teamsters, 763 F.2d 574, 577 (3rd Cir.1985).
Plaintiffs' claims of bargaining misconduct and duress are, as defendant argues, preempted by the exclusive jurisdiction of the National Labor Relations Board since these claims involve assertions of unfair labor practices. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). While plaintiffs are correct that a district court is not precluded from hearing claims under § 301 of the LMRA when a contract breach also constitutes an unfair labor practice, Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), there has been no breach of contract in this case.[9] The unfair labor practice claims taken only as that, are preempted. See, Local Union 204 v. Iowa Electric Light and Power Co., 668 F.2d 413 (8th Cir.1982).
Accordingly,
IT IS HEREBY ORDERED tht defendant's motion for summary judgment is GRANTED.
IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is DENIED.
NOTES
[1] Plaintiffs, in their statement of facts, describe a series of informational meetings held in late 1984 for the purpose of educating employees as to the nature of the ESOP proposal. At one meeting, plaintiff alleges "it was explained to the members of the Local Union committee that if the ESOP transaction was consummated, the implementation of the ESOP would not affect any entitlements which had been earned under the Kaiser Refractories Mexico Division Pension Plan up until the last day immediately preceding start-up of the ESOP company." The Court has taken this representation as true although plaintiffs have failed to cite any deposition, document or affidavit to substantiate it for purposes of supporting a motion for summary judgment. It does appear, however, that at least some general representations were made to the rank and file regarding the assured status of their pensions. The notes of Charles C. Smith (the chief operating officer of the Kaiser Refractories Division) which apparently outlines his major points about the proposed ESOP, state on the fifth page "KACC [Kaiser] owes you what earned."
[2] Once again, plaintiffs have cited no deposition, document or affidavit to support this statement. Since defendant has not disputed this, however, the Court will accept it as true for purposes of plaintiffs' motion for summary judgment.
[3] For the same reasons as set forth in footnote 2, the Court will accept plaintiffs' account on this point to be true.
[4] The old pension agreement, although made contingent on ratification by the local rank and file, provides that "[t]his Agreement made and entered into ... by and between [Kaiser] and the [International Union] on behalf of its Local Union No. 660....
[5] Although the local union officers refused to sign the pension amendment, there is no indication that they ever protested or challenged Murray's authority to sign the document.
[6] In the future, plaintiffs' counsel should set forth distinct claims in separate counts as required by the Federal Rules of Civil Procedure.
[7] 26 U.S.C. § 411(d)(6) is the Internal Revenue Code counterpart of ERISA § 204(g), 29 U.S.C. § 1054(g). The Court's discussion regarding § 411(d)(6) will be applicable to § 204(g) as well.
[8] This section was amended in 1984, but the new provisions which might have changed the result here, apply only to plan years beginning after December 31, 1984.
[9] Plaintiffs filed a complaint against Kaiser before the NLRB. That body found, however, that there was insufficient evidence to support plaintiffs' claim and refused to issue a complaint.